Argued and submitted January 19, reversed and remanded for new trial
November 16, 1994

# STATE OF OREGON,
*Respondent,*

*v.*

# JOSE ARROYO-SOTELO,
aka Pedro Rendon Betancourt,
aka Angel Arroyo-Moreno,
*Appellant.*

## (89CR0051; CA A78912)

884 P2d 901

Antonio Salazar argued the cause for appellant. With him on the brief was Linda Friedman Ramirez.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Riggs and Haselton,* Judges.

DEITS, P. J.

Haselton, J., concurring.

---

* Haselton, J., *vice* Richardson, C. J.

**DEITS, P. J.**

Defendant appeals his conviction for possession of a schedule II controlled substance (cocaine). ORS 475.992-(4)(b). He assigns as error the trial court's denial of his motion to suppress evidence seized following the consensual search of his car. We reverse.

On October 18, 1988, at approximately 9:50 p.m., Officer Anderson stopped the car that defendant was driving for failure to maintain a single lane, a traffic infraction. After concluding that defendant was not under the influence of intoxicants, Anderson told defendant that he was going to issue him a warning and asked for his driver license and vehicle registration. Defendant gave Anderson a California driver license, but could not produce the car's registration. According to Anderson, defendant appeared extremely nervous and was unable to remember the name of his friend who owned the car. Defendant said that the friend's name was listed on the temporary permit. Anderson told defendant that it would take a few minutes to radio the appropriate information to dispatch. Dispatch informed Anderson that the car's title had been transferred eight times in the past four months and that the registered owner was the person whose name was listed on the temporary permit. Anderson also learned that the California driver license was valid, but that it had been surrendered.

Anderson turned off his overhead lights and approached defendant, who was now out of his car. He issued defendant a warning for the traffic infraction and told him that if he was tired, he should let his passenger drive. He then returned defendant's driver license and told him that he was free to go. As defendant turned backed towards his car, Anderson asked him if he had any weapons in the car. Defendant laughed, said no and told Anderson that he could look if he wanted to. Anderson then asked him if there were narcotics, cocaine, marijuana, heroin or large amounts of currency in the car. Defendant said no. Anderson then asked for permission to search the car. Defendant told him to "go ahead and look." Anderson also asked defendant's passenger if there were narcotics, money or weapons in the car. The passenger also answered no and consented to a search of the car for those items.

Before conducting the search, Anderson called for the assistance of a second officer. After Officer Melahn arrived, Anderson asked defendant to open the trunk, which he did. Anderson found luggage and a purse in the trunk. After getting consent from the passenger to search the purse, Anderson found several thousand dollars inside it. He asked the passenger why she had not told him about the cash. She responded that she believed he had only asked her about cash in the car. Anderson again asked defendant and his passenger if there were large amounts of cash in the car, and they said no.

At the suppression hearing, Anderson testified that, based on his training and experience in investigating narcotics trafficking, he knew that contraband is often concealed behind the panels of car doors. During the search of defendant's car, Anderson removed two screws from the rear passenger armrest molding and, in order to look into the hollow compartment between the panel and the sidewall of the car, pried the panel away from the sidewall. By peering behind the panel, he saw a large amount of cash in the compartment. Anderson returned to where defendant was standing and again asked him if there were large amounts of cash in the car. Defendant again said no. Anderson returned to defendant's car and, as he was lifting the side panel out, he saw several stacks of cash, on top of which there was a clear plastic bag with white powder inside it. At that point, Anderson arrested defendant and advised him of his *Miranda* rights. Defendant's arrest occurred approximately 15-20 minutes after the start of the search.

Defendant argues that Anderson's conduct in taking out two screws and prying the panel from the sidewall of the car exceeded the scope of his consent to search,[1] thus violating his rights under Article I, section 9, and the Fourth Amendment.[2] The trial court, relying on our decision in *State*

---

[1] Defendant also argues that he was detained in violation of ORS 810.410(3) when Anderson engaged him in conversation after issuing him a warning for the traffic infraction, and that his consent was not voluntary. In the light of our conclusion that the search exceeded the scope of defendant's consent, we need not address his alternative arguments for the suppression of the evidence.

[2] Article I, section 9, provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

*v. Allen*, 112 Or App 70, 826 P2d 127, *rev den* 314 Or 176 (1992), determined that Anderson's search of the car did not exceed the scope of defendant's consent:

> "[A]n officer indicating what it is he's going to search for, in this case drugs, money or weapons[,] and there was no limitation placed on the scope of the search[,] then the analysis in [*State v. Allen, supra,*] seems to indicate that * * * the allowable search, may be fairly broad and I think the inference from that is that the officer is entitled to look in places where those kind of items would likely be found and again * * * the officer is entitled to use his intelligence and his experience in likely places to find drugs. He did so [in removing the side panels], and in what I would think would be a permissible area, given the fact there were no limitations on the search that the Court would not find that the scope of the search exceeded the consent and so the motion to suppress will be denied."

■■ We first consider defendant's claim under Article I, section 9, of the Oregon Constitution. *State v. Kennedy*, 295 Or 260, 266, 666 P2d 1316 (1983). As a threshold matter, we must clarify the proper standard for reviewing the trial court's holding that Anderson's actions did not exceed the scope of defendant's consent. The issue is whether the trial court's holding is to be reviewed as a question of law or as a finding of fact that must be sustained if supported by any evidence in the record. We first note that the factual circumstances surrounding a consent to search are often critical in determining whether the breadth of the consent has been exceeded. *Cf. State v. Weaver*, 319 Or 212, 214, 874 P2d 1322 (1994). Questions of historical fact that bear directly on that issue include the content of the request for consent, the duration of the search and the places and items inspected. When the trial court makes such findings, and there is evidence in the record to support them, the findings will not be disturbed on appeal. *State v. Stevens*, 311 Or 119, 135, 806 P2d 92 (1991).

■ However, once the facts have been decided, their legal effect is a question of law. In the federal courts, it is

---

The Fourth Amendment provides, in part:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated * * *."

recognized that the issue of whether an officer has over-stepped the boundaries of a defendant's consent, thereby encroaching on the defendant's Fourth Amendment right to privacy, is to be reviewed as a question of law. *See U.S. v. Rich*, 992 F2d 502, 505 (5th Cir), *cert den* ___ US ___, 114 S Ct 348 (1993); *U.S. v. Ibarro*, 965 F2d 1354, 1357, 1361 (5th Cir 1992). Although neither the Oregon Supreme Court nor this court has expressly declared that whether an officer exceeded the scope of a consent, and thus infringed on the defendant's rights under Article I, section 9, is ultimately a question of law, the issue consistently has been reviewed as such; that is, it has been assessed anew without regard to the trial court's holding on the matter. *See State v. Allen, supra*; *State v. Allen*, 104 Or App 519, 802 P2d 91 (1990), *rev den* 311 Or 261 (1991); *State v. Gaither*, 76 Or App 201, 708 P2d 646 (1985).

■     Our task here, then, is to determine whether the trial court's factual findings, supported by the record, are adequate to sustain its legal conclusion that Anderson acted within the scope of defendant's consent. *See, e.g., State v. Stevens, supra*, 311 Or at 135 (articulating same standard for reviewing voluntariness of consent). In making this inquiry, we first note that the standard for determining the scope of a suspect's consent under the Fourth Amendment is that of "objective reasonableness," with the critical inquiry focusing on what a "typical reasonable person [would] have understood by the exchange between the officer and the suspect[.]" *Florida v. Jimeno*, 500 US 248, 251, 111 S Ct 1801, 114 L Ed 2d 297 (1991). In our decisions involving the scope of consent under Article I, section 9, we have never explicitly articulated our standard; however, we have consistently evaluated the intent of the consenting parties objectively, looking at the totality of the circumstances of the particular case. *See, e.g., State v. Allen, supra*, 112 Or App at 74-75; *State v. Allen, supra*, 104 Or App at 523, *State v. Gaither, supra*, 76 Or App at 205. Similarly, Oregon courts have recognized that questions involving the propriety of police conduct under Article I, section 9, customarily are judged on an objectively reasonable basis, requiring an inquiry into the surrounding circumstances of the particular case. *See, e.g., State v. Bates*, 304 Or 519, 747 P2d 991 (1987); *State v. Pavelek*, 122 Or App 181, 857 P2d 863 (1993) (deciding whether police officer's actions

were reasonable safety precautions under the circumstances).

We thus conclude that the "objective reasonableness" standard articulated in *Florida v. Jimeno, supra,* best comports with the requirements of Article I, section 9. That standard also provides police with a practical and comprehensible standard by which to assess the legality of their actions and avoids imposing upon them the futile task of attempting to read a defendant's thoughts in order to ascertain his or her actual intent. *See State v. Holmes,* 311 Or 400, 410 n 19, 813 P2d 28 (1991) ("[a]n officer should only be responsible for anticipating the effects of his action on an objectively reasonable person").

■   Under that standard, we must consider what a reasonable person would have understood by the interchange between the officer and defendant, the person giving consent. As discussed above, this requires an evaluation of the factual circumstances. One of the best indicators of the intended scope of a search authorized by consent is the content of the request for consent. *State v. Allen, supra,* 112 Or App at 74-75; *see also Florida v. Jimeno, supra,* 500 US at 251 ("The scope of a [consent] search is generally defined by its expressed object."). In *Allen,* the defendant consented to an officer's request to "check" his vehicle and trunk for narcotics, weapons and currency. The defendant did not impose any limitations on the officer's search. The officer checked the interior of the car and the trunk. While searching the trunk, he opened the defendant's suitcase and found two weapons and $13,500. The defendant argued that, although he consented to a search of his car, he did not consent to a search of his suitcase. We held that, under those circumstances, the defendant's consent was broad enough in scope to allow the officer to open the suitcase. We reasoned:

> "After [the officer's] search of the interior of the car, which included opening a purse of a passenger in the car, [he] went to the trunk. He asked each of the persons in the car to identify his or her luggage. Defendant identified his luggage, but did not withdraw his consent or place any limitations on [the officer's] search, even though it was apparent that [the officer] was going to open the suitcase. *See State v. Gaither, supra,* 76 Or App at 205." 112 Or App at 75.

In determining that the defendant's consent extended to the suitcase in the trunk, we placed great weight on the fact that the officer stated in his request for consent that he would be searching for specific items that were capable of being concealed in numerous places in the car. We noted:

"When a request to search contains no limitations and a defendant places no limitation on the search, the scope of the allowable search may be fairly broad. *This is particularly so when the police indicate in the request for consent that they are searching for specific items that may be found in small compartments or containers.*" 112 Or App at 74. (Emphasis supplied; citations omitted.)

Thus, the scope of a consent search generally should be interpreted to include those areas where the items that are the subject of the search might be found. *See also U.S. v. Harris*, 928 F2d 1113, 1118 (11th Cir 1991); *U.S. v. Garcia*, 897 F2d 1413, 1419 (7th Cir 1990); *U.S. v. Battista*, 876 F2d 201, 207-08 (DC Cir 1989).[3]

■ Here, Anderson asked to search the car for narcotics, cocaine, heroin and large amounts of cash. Defendant consented to the search of his car for those items. Defendant did not specify any limitations on the search of his car. Accordingly, Anderson's authority to search was quite broad. However, even a broad grant of authority to search is not without limits. As mentioned above, the critical question is what would a reasonable person have understood the consent to encompass. We do not believe that a reasonable person would have understood defendant's general consent to a search of his car for narcotics, money and weapons, to authorize Anderson to remove screws and pry the panel from the sidewall of the car.

■ Absent specific facts to suggest otherwise, a general consent to search a car does not authorize an officer to search areas of a car that are not designed to be routinely opened or

___

[3] That statement, however, does not mean that the scope of the consent includes *any* area where a specified item might be found. For example, if a suspect has narcotics hidden inside a spare tire, *that* spare tire becomes an area where narcotics "might" be found. However, a reasonable person would not understand the suspect's general consent to search the car as authorizing an officer to slash the spare tire and investigate its contents. *See U.S. v. Strickland*, 902 F2d 937 (11th Cir 1990).

accessed. The fact that Anderson had to remove two screws and pry a panel away from the sidewall to access the area of the search supports our conclusion that that area was not within the scope of defendant's general consent to a search. The state suggests that because Anderson was able to access that area without causing any damage or destruction, the search was within the scope of defendant's consent. Contrary to the state's arguments, however, the parameters of such a search are defined by what a reasonable person would understand by the consent given, not by the extent to which an officer can avoid causing damage or destruction to the car or its contents.

An additional factor in this case supports our conclusion that, from an objectively reasonable viewpoint, defendant did not consent to the prying of the side panel from the sidewall. In *State v. Allen, supra,* 112 Or App at 75, we found that it was significant that the defendant did not attempt to stop the search, although he was in a position to do so. Here, Melahn testified that at approximately the same time that Anderson focused his search on the driver's side of the car, defendant attempted to approach the car and that Melahn verbally restrained him. Defendant did not express any concern to Melahn regarding the extent of the search. However, because he was away from the car, he would have been unable to see precisely what Anderson was doing. Accordingly, we cannot say here that defendant's failure to voice an objection to Anderson's unscrewing of the panel is evidence that his general consent was intended to encompass the removal of the side panel from his car.

We hold that it is not objectively reasonable to construe defendant's general consent to the search of his car to authorize the prying open and removal of the panel from the sidewall of his car. We conclude that, under these circumstances, Anderson's conduct exceeded the scope of defendant's consent to search. Accordingly, the trial court erred in denying defendant's motion to suppress the evidence seized as a result of the consensual search of his car.

Reversed and remanded for a new trial.

**HASELTON, J.,** concurring.

I agree that the cocaine seized from defendant's car must be suppressed. However, I cannot join in the majority's

reiteration of *State v. Allen*, 112 Or App 70, 826 P2d 127, *rev den* 314 Or 176 (1992), because I believe that *Allen* was wrongly decided. Accordingly, I concur.[1]

The majority invokes *Allen* for the proposition that "[w]hen a request to search contains no limitations and a defendant places no limitation on the search, the scope of the allowable search may be fairly broad." 131 Or App at 297. That analysis cannot be squared with the general treatment of consent searches under the Oregon Constitution.

Consent searches are an *exception* to the warrant requirement of Article I, section 9. *See, e.g., State v. Weaver, supra* n 1, 319 Or at 219. To be valid, a consent to search must be voluntary. *See, e.g., State v. Paulson, supra* n 1, 313 Or at 352-53; *State v. Stevens, supra* n 1, 311 Or at 135. Consistent with those principles:

> "Under the consent exception to the warrant requirement, the state must prove by a preponderance of the evidence that someone having the authority to do so voluntarily gave the police consent to search the defendant's person or property and that any limitations on the scope of the consent were complied with." *State v. Weaver, supra*, 319 Or at 219.

*Allen* subverts those principles by inviting subterfuge. It encourages peace officers to cast requests for consent in the broadest and most ambiguous of terms, putting the onus on citizens, confronted with uniformed authority, to define and limit the search. *Accord State v. Allen, supra*, 112

---

[1] Although I agree that "objective reasonableness" defines the scope of a citizen's consent to search, I am by no means confident in that conclusion. As the majority acknowledges, neither this court nor our Supreme Court has "expressly declared that whether an officer exceeded the scope of a consent" is an issue of law or of fact. 131 Or App at 295. Certainly, there is authority, albeit implicit, for the contrary proposition. *See, e.g., State v. Paulson*, 313 Or 346, 351-53, 833 P2d 1278 (1992) (remanding to trial court for resolution of "factual question" of whether defendant's 9-1-1 call for emergency assistance conferred consent for police officers to enter apartment). *Accord State v. Weaver*, 319 Or 212, 222-24, 874 P2d 1322 (1994) (Gillette, J., concurring). *But see State v. Stevens*, 311 Or 119, 135, 806 P2d 92 (1991) (although reviewing court is bound by trial court's findings of historical fact regarding voluntariness of consent to search, trial court's ultimate determination of voluntariness is subject to *de novo* review).

Nonetheless, to the extent our Supreme Court wishes us to employ an analysis different from the sensible and workable "objective reasonableness" approach of the federal cases—a different analysis which, incidentally, would insulate trial court determinations regarding scope of consent from effective appellate review—we should await a clearer signal.

Or App at 76 (Joseph, C. J., dissenting) ("That is a wonderful way of switching the burden from the state to the defendant").

Such a burden-shifting gambit of studied imprecision is constitutionally unacceptable. In requesting consent, agents of the state must clearly identify the intended scope and object of their search or bear the risk of any imprecision.[2]

---

[2] This rationale is hardly remarkable. In the civil context, we routinely construe ambiguities in contractual language against the person employing that language. *See, e.g., Heinzel v. Backstrom*, 310 Or 89, 97, 794 P2d 775 (1990) (applying "rule that any ambiguity in an agreement is to be resolved against the party who drafted it"). It is risky business importing civil contractual concepts into the criminal law—and I am not proposing that we do so. Still, the parallel between offer and acceptance on one hand, and requests for consent and the granting of consent on the other, is instructive.