Argued and submitted October 31, 1995, reversed and remanded for new trial
July 31, 1996

## STATE OF OREGON,
*Respondent,*

*v.*

## MICHAEL OTIS JACOBSEN,
*Appellant.*

(93C-21188; CA A86835)

922 P2d 677

Ingrid A. MacFarlane, Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Janie M. Burcart, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

**DEITS, P. J.**

Defendant appeals from a judgment convicting him of being a felon in possession of a firearm, ORS 166.270. He assigns error to the denial of his motion to suppress evidence. We reverse.

The facts are undisputed. On October 5, 1993, at about 1:30 in the morning, Officer Baker, who was on routine patrol, noticed a pickup truck parked in the gravel parking lot of a public park's little league baseball field. A city ordinance provided that all city parks close at sunset, so Baker decided to investigate. Baker drove toward the pickup with the patrol car spotlight on. When he was within 100 to 150 feet of the pickup, defendant, wearing a stocking cap, jumped up out of the bed of the truck and approached Baker's car very quickly. Defendant walked up close to the car window and appeared to be upset at being awakened. Baker told defendant to step back and asked for his name. Defendant told Baker his name and volunteered that his driving privileges were suspended. Baker then told him that the park was closed, and defendant responded that he had had a fight with his girlfriend and was at the park "to have some place to sleep."

In the meantime, Baker had learned from dispatch that the pickup truck did not belong to defendant. Baker radioed for cover and officers LeDay and Jolly quickly responded. After their arrival, Baker asked defendant if he would walk over to the pickup with him. Defendant agreed and walked with the three officers to the rear of the pickup. The officers noticed that defendant had a lot of personal property in the bed and cab of the pickup. LeDay asked him if he could look around in the bed of the truck. Defendant consented and LeDay found no evidence of criminal activity. Baker then asked defendant if he could look in the cab of the truck. Defendant responded "sure" and gave Baker the keys to the cab. After unlocking both doors, Baker and LeDay started searching the passenger compartment, while defendant stood at the rear of the truck talking with Jolly.

During the search, Baker noticed a closed tote bag sitting on the driver's side seat. He unzipped the tote bag and

discovered a closed pistol case. He then unzipped the pistol case and discovered a loaded .45 caliber semi-automatic pistol. Baker unloaded the pistol and asked defendant whether he knew anything about the gun. Defendant replied that he did not. LeDay testified that he heard defendant state that he did not know that the gun was "in there." After discovering the pistol,[1] LeDay ran a criminal records check on defendant and discovered that he had been convicted of a felony. Defendant was then arrested and charged with being a felon in possession of a firearm. ORS 166.270.

Before trial, defendant moved to suppress the evidence of the pistol on the grounds that he was unlawfully stopped and that the officers conducted the search without a valid warrant or consent. The trial court denied the motion, ruling that defendant was not stopped and that the officers conducted the search pursuant to defendant's consent. After a stipulated facts trial, defendant was convicted of being a felon in possession of a firearm.

Defendant assigns error to the trial court's denial of his motion to suppress. On appeal, defendant's sole argument is that Baker exceeded the scope of his consent to search when he opened the closed duffel bag that contained the pistol, thus violating his rights under Article I, section 9, and the Fourth Amendment. The state argues that the search did not exceed the scope of defendant's consent.

■ Before we address the merits of that argument, however, we must first decide a threshold issue raised by the state. The state, relying on *State v. Knox*, 134 Or App 154, 894 P2d 1185 (1995), argues, for the first time on appeal, that defendant's motion to suppress must necessarily fail[2]

---

[1] Baker also discovered in the tote bag a closed wooden box, which he opened, and which contained drug paraphernalia. After discovering the pistol, defendant was frisked, and the officers found a long throwing knife, a pocket knife, and a stun. gun on his person. None of that evidence, however, provided the basis for defendant's criminal charge and subsequent conviction.

[2] The Supreme Court has indicated that this issue is often mischaracterized as one of standing:

"A criminal defendant always has standing to challenge the admission of evidence introduced by the state. *State v. McMurphy*, 291 Or 782, 785, 635 P2d 372 (1981). The question whether a defendant's personal rights were violated by an unlawful search or seizure is often mislabeled a question of 'standing,' but the question goes to the merits of a motion to suppress. The term

because he disclaimed "any possessory or privacy interest in the pistol and its zippered case." Defendant responds that the state may not assert this issue on appeal because it was not preserved below. He also argues, that, in any event, our decision in *Knox* is distinguishable, because in this case, in contrast to *Knox*, defendant had a protected interest in the container that held the seized item. Thus, defendant asserts that here his disclaimer of interest in the pistol is immaterial.

In *Knox*, the defendant was taken to the police station in the back of a patrol car. On the way there, the officers noticed defendant fidgeting and bouncing around. When the officers removed him from the back seat, they noticed that his front pants pocket was turned inside-out. After the defendant was put in jail, an officer went back to the patrol car and looked under the rear seat. The officer found a zippered pouch containing cocaine. When confronted with the cocaine, the defendant said that he knew nothing about the pouch or the cocaine. Defendant was subsequently charged with, *inter alia*, being in possession of a controlled substance. Before trial defendant moved to suppress the evidence of the cocaine.

In *Knox*, the state argued, for the first time on appeal, that because defendant disclaimed any interest in the cocaine, he "could not be heard to complain about the constitutionality of its seizure." *Id.* at 160. The defendant contended that we could not consider the state's argument, because it was not preserved in the trial court. We concluded that it was appropriate to consider the state's argument. We explained that we generally may affirm a ruling of the trial court on grounds different from those on which the court relied "provided that there [was] evidence in the record to support the alternative ground." *Id.* However, we also stated that we would not address the argument "if the parties were not allowed to develop the factual record at trial to address the issue raised for the first time on appeal." *Id.* at 161. We held that we could consider the argument in that case, because the record clearly showed that defendant had disclaimed any interest in the items seized.

'standing' should be used only in the narrow sense of capacity to make a legal challenge." *State v. Tanner*, 304 Or 312, 316, 745 P2d 757 (1987).

Similarly, in this case, we conclude that we may consider the state's argument, although not raised below, because it is an alternative ground on which to affirm the trial court's decision and because the record on the facts necessary to the state's argument is fully developed and defendant does not argue otherwise. The record is clear that defendant disclaimed any interest in the pistol. Baker testified that when confronted with the pistol, defendant responded, "I don't know anything about the gun." LeDay testified that he heard defendant state that he did not know that the gun was in the bag. Accordingly, we will consider the state's argument.

■ The state is essentially arguing that a defendant who disclaims any interest in an item seized cannot successfully argue for its suppression even though the police, in discovering it, may have infringed upon a protected interest in the place searched. We do not agree with that proposition nor is it consistent with our holdings. In *State v. Akers*, 138 Or App 289, 292, 907 P2d 1131 (1995), *rev den* 323 Or 153 (1996), we held that a defendant could challenge the lawfulness of a search or seizure under Article I, section 9, or the Fourth Amendment if "he had a protected interest in the particular item *searched* or *seized*." Thus, the fact that defendant here disclaimed any interest in the pistol does not mean that he cannot challenge the lawfulness of the search of the duffel bag containing it.

■ We conclude that the search here did infringe on defendant's interest in the duffel bag and that, absent some other basis on which to justify the search, the pistol must be suppressed. *State v. Tanner*, 304 Or 312, 316, 745 P2d 757 (1987). Contrary to the state's argument, *Knox* does not require a different conclusion. In *Knox*, the police seized the pouch of cocaine from the back seat of a patrol car, an area in which the defendant had no protected interest. Because the defendant had no protected interest in the area searched, it was essential that he assert some interest in the item seized. His failure to do so was therefore fatal to his motion to suppress that evidence. Here, the police seized the evidence that the defendant sought to suppress by searching *an area*—the

duffel bag—in which he had some protected interest.[3] We therefore agree with defendant that *Knox* is distinguishable and, consequently, that defendant's disclaimer of interest in the pistol does not necessarily preclude him from successfully seeking its suppression based on an unlawful search of the bag.

We turn next to the scope of consent issue. We review the question of whether an officer's search exceeded the scope of a consent as a question of law, accepting the trial court's findings of historical facts if evidence exists to support them. *State v. Arroyo-Sotelo*, 131 Or App 290, 294-95, 884 P2d 901 (1994). Because the search here proceeded without a warrant, the state has the burden of establishing its lawfulness. *State v. Miller*, 269 Or 328, 524 P2d 1399 (1974).

Defendant argues that Baker exceeded the scope of his consent to search the cab of the truck when he opened the zipped duffel bag. He argues that the facts here are analogous to those in *Arroyo-Sotelo*, where we concluded that the officer exceeded the scope of the defendant's consent. The state disagrees, arguing that the facts here are analogous to *State v. Allen*, 112 Or App 70, 826 P2d 127, *rev den* 314 Or 76 (1992), where we concluded that the officer's search did not exceed the scope of the defendant's consent.

In *Allen*, the officer pulled over the defendant's vehicle for a traffic infraction. After giving the defendant a warning and telling him that he was free to leave, the officer asked the defendant if he had any "weapons, narcotics, or large sums of money" in the vehicle. The defendant replied "no," and the officer asked if he could "check the vehicle for any of the mentioned items." *Id.* at 73. The defendant agreed. A

---

[3] The state appears to contend, again for the first time on appeal, that defendant did not have a protected interest in the duffel bag. Although the state did not specifically argue to us that defendant disclaimed any interest in the duffel bag, at oral argument it "contest[ed] whether or not the evidence shows that it was his bag." It is important to note that a person need not own an item seized or a place searched to have a protected interest therein. *See State v. Herrin*, 323 Or 188, 915 P2d 953 (1996) (defendant's exercise of control over automobile that he did not own was sufficient to support privacy interest). Beyond that, we decline to consider that argument for the first time on appeal, because as the state acknowledged, the issue of defendant's interest in the duffel bag is not well-developed in the record. *Knox*, 134 Or App at 161.

search of the car's interior produced a small quantity of marijuana found in a passenger's purse. The officer then asked the defendant to open the trunk, which he did. He then asked each of the persons in the car to identify his or her luggage. The defendant did so and, while the defendant was still standing there, the officer opened it and found weapons and $13,500. The defendant moved to suppress the evidence of the weapons and the money, arguing, *inter alia*, that the officer exceeded the scope of his consent. The trial court denied the motion, and we affirmed.

In reaching our conclusion in that case, we closely examined the particular circumstances. We noted that an important factor in determining the scope of a consent to search is the contents of the interchange between the officer and the defendant. We were particularly persuaded in *Allen* by the fact that when the officer asked for consent, he mentioned that he was looking for particular items, thereby giving the defendant some indication where the officer would be looking. We were also persuaded by the fact that the searched suitcase was the type of container that might hold the types of items that the officer mentioned. Finally, we were influenced by the fact that defendant stood by the officer as he conducted the search, but did not withdraw his consent or place any limitations on the search when it became apparent that the officer was going to open his suitcase. Based on those facts, we ultimately concluded that, in that case, the officer did not exceed the scope of the defendant's consent.

In *Arroyo-Sotelo*, the officer stopped the defendant's vehicle for a traffic infraction. After giving the defendant a warning and telling him that he was free to leave, the officer asked him if there were "narcotics, cocaine, marijuana, heroin or large amounts of currency" in the car. The defendant replied "no." The officer then asked the defendant for consent to search the car, and he responded "go ahead and look." The officer found several thousand dollars in a passenger's purse. The officer then expanded the search by removing screws from the rear passenger door and prying the door panel away from the sidewall. Behind the panel, the officer found a large amount of cash and a plastic bag containing white powder. The defendant moved to suppress that evidence on the

ground that the officer exceeded the scope of his consent. The trial court denied the motion, and we reversed.

In so ruling, we explained that the standard for determining the scope of a person's consent to search under both Article I, section 9, and the Fourth Amendment is one of objective reasonableness. *Arroyo-Sotelo*, 131 Or App at 296. We stated that, under that standard, we must determine whether an objectively reasonable person would have understood the particular consent given to include a search of the area at issue. *Id.* As in *Allen*, we emphasized that our ultimate conclusion was dependent on all of the particular circumstances. Again, we noted that the interchange between the officer and the defendant was important; in particular, the content of the officer's request was significant. In *Arroyo-Sotelo*, the officer asked to search for specific items that could be found in containers and the defendant did not expressly limit his consent. We therefore concluded that the officer's authority to search was "quite broad." Nonetheless, we held that a reasonable person would not have understood the consent to search under those circumstances to allow the officer to search the space between the door panel and sidewall:

> "Absent specific facts to suggest otherwise, a general consent to search a car does not authorize an officer to search areas of a car that are not designed to be routinely opened or accessed. The fact that [the officer] had to remove two screws and pry a panel away from the sidewall to access the area of the search supports our conclusion that that area was not within the scope of defendant's general consent to a search." *Id.* at 297-98.

We also specifically noted that, unlike the defendant in *Allen*, the defendant in *Arroyo-Sotelo*, was not in a position to "voice an objection" to the officer's act of removing the side panel. *Id.* at 298.

Here, the key issue is whether an objectively reasonable person would have understood defendant's consent to authorize Baker to open the zipped duffel bag. The facts here fall somewhere between those in *Allen* and *Arroyo-Sotelo*. We conclude, however, that they are closer to *Arroyo-Sotelo*. First, we consider the interchange between Baker and defendant. The request to search was very general in nature.

Baker testified that he asked defendant, "would you mind if I look * * * inside the cab." Unlike the officers in *Allen* and *Arroyo-Sotelo*, Baker did not indicate that he was going to search for specific items that might be found in particular containers such as the zipped duffel bag. Moreover, the context in which the request was made was, as Baker put it, casual "basic conversation." An objectively reasonable person would have understood defendant's consent to authorize a more general sweep of the truck's cab.

Moreover, unlike the defendant in *Allen*, defendant here was not in a position to observe Baker opening the bag and, therefore, did not have an opportunity to object to his doing so. The evidence shows that defendant was standing at the rear of the truck engaged in conversation with another officer as Baker and LeDay searched the cab of the pickup. There is no evidence that, from that position, defendant could see what Baker was doing. That lack of evidence goes against the state, because it has the burden of proving the lawfulness of the search.

Finally, we reject the state's argument that the search here was different from that in *Arroyo-Sotelo*, because, unlike the side panel in that case, the zipped duffel bag here was designed to be readily accessible. The characterization of the duffel bag may be correct, but that fact alone is not sufficient to overcome the other circumstances here, which we believe lead to the conclusion that an objectively reasonable person would not have understood the consent to search to include the opening of containers in the truck's cab. Based on the above considerations, we conclude that Baker exceeded the scope of defendant's consent when he opened the zipped duffel bag. Accordingly, the trial court erred in denying defendant's motion to suppress evidence of the gun.

Reversed and remanded for new trial.