Filed 4/22/15  P. .v Smartt CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE, | C075619 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F03904) |
| v. | |
| AHMAD SMARTT, | |
| Defendant and Appellant. | |

Defendant Ahmad Smartt appeals from a judgment entered after the trial court denied his motion to suppress and he pleaded no contest to possession of a short-barreled shotgun.  (Pen. Code, § 33210.)[1]  Defendant contends the trial court erred in denying his motion to suppress.  He also asks us to conduct an independent review of the *Pitchess* hearing.  (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).)  We shall affirm the judgment.

**BACKGROUND**

On September 11, 2013, an information was filed charging defendant with possession of a short-barreled shotgun.  (§ 33210.)  The information alleged that

---

[1] Undesignated statutory references are to the Penal Code.

1

defendant possessed the shotgun in association with a criminal street gang. (§ 186.22, subd. (b)(1).) Defendant pleaded not guilty and denied the gang association allegation.

On September 30, 2013, defendant filed a *Pitchess* motion, which the trial court granted. The trial court conducted an in camera hearing on October 24, 2013, but found that there was no discoverable evidence.

On October 25, 2013, defendant filed a motion to suppress evidence pursuant to section 1538.5. At the hearing on the motion, Sacramento County Sheriff's Deputy Dennis Peyton testified that he was on routine patrol with his partner, Sergeant Chris Guerrero, on the afternoon of June 18, 2013. Sergeant Guerrero was driving an unmarked car. As they drove past the Economy Inn on Watt Avenue, Deputy Peyton observed four men loitering in the parking lot. One of the men was wearing clothing that caused Deputy Peyton to believe that he might be affiliated with a criminal street gang. Deputy Peyton recognized defendant from two previous contacts, one of which involved a vehicle stop of a car in which defendant was a passenger. On that occasion, a handgun was found in the glove box directly in front of defendant.

Upon seeing the unmarked car, defendant "stood up, grabbed a backpack, slung it over his shoulder, [and] quickly started walking away." Deputy Peyton suspected that the backpack contained a heavy object, judging from the way defendant picked it up and slung it over his shoulder.

Sergeant Guerrero drove up alongside defendant, who had by then reached the perimeter of the parking lot. Deputy Peyton exited the car and addressed defendant, saying, "hey, I remember you." Defendant came over to Deputy Peyton and shook his hand.

Deputy Peyton then asked defendant "if he had any weapons or anything on him." Defendant responded that Deputy Peyton could "go ahead and check." Defendant turned, set his backpack down, and turned back to face Deputy Peyton. Deputy Peyton then conducted a patsearch of defendant, which revealed nothing of evidentiary value.

2

During the patsearch, Deputy Peyton asked defendant whether he had any outstanding warrants. Defendant responded that he had taken care of them. As part of their conversation, "probation was mentioned as an outcome to the previous warrants." However, defendant did not say whether his probation included search terms. Deputy Peyton did not confirm defendant's probation status until after his arrest. The record does not disclose whether defendant's probation included search terms.

After Deputy Peyton completed the patdown search, he asked defendant about his backpack. Defendant told Deputy Peyton that the backpack contained a BB gun.

Deputy Peyton then picked up the backpack. As he did so, the backpack struck him in the knee. Deputy Peyton believed that the backpack was too heavy for a BB gun, and asked defendant whether he had a sawed-off shotgun in the pack. Defendant responded by "kind of" looking away and hanging his head. Deputy Peyton handcuffed defendant, opened the backpack, and discovered the sawed-off shotgun.

After hearing argument, the trial court denied the motion to suppress, stating, "Whether the issues that have been raised by defense, I do think overall, given the conduct the defendant immediately seeing the officer and walking away, his movement indicating the weight and the backpack, his looking away, the officer demonstrated he looked down and away when confronted there's a shotgun in that. When the defendant said it was a BB gun, and all that, in my mind indicates suspicious behavior on his part, and I agree with the People. It is basically [an] admission that it was not a BB gun, and that it was something else that was illegal. The officer actually patting down the pack by simply picking it up to see that it was substantially heavier than the BB gun I think is minimal given the suspicious nature of the circumstance, the other people there in gang colors, his prior contact with the defendant, and being around firearms. The motion to suppress would be denied."

After the trial court denied the motion to suppress, defendant entered a plea of no contest to the charge of possessing a sawed-off shotgun (§ 33210) and admitted the gang

3

association allegation (§ 186.22, subd. (b)(1)). Defendant was then sentenced to one year in county jail and five years probation.

Defendant filed a timely notice of appeal.

## DISCUSSION

### I

### *Motion to Suppress*

Defendant argues the trial court erred in denying his motion to suppress evidence. He contends the evidence of the short-barreled shotgun was the product of an illegal search of his backpack. We disagree.

#### A. *Standard of Review*

"In reviewing a suppression ruling, 'we defer to the superior court's express and implied factual findings if they are supported by substantial evidence, [but] we exercise our independent judgment in determining the legality of a search on the facts so found.' " (*People v. Lomax* (2010) 49 Cal.4th 530, 563.) We will affirm the trial court's ruling if correct on any theory of applicable law. (*People v. Zapien* (1993) 4 Cal.4th 929, 976.)

#### B. *Fourth Amendment Principles*

The Fourth Amendment to the United States Constitution bans all unreasonable searches and seizures. (*United States v. Ross* (1982) 456 U.S. 798, 825 [72 L.Ed.2d 572, 594].) "The ultimate standard set forth in the Fourth Amendment is reasonableness." (*Cady v. Dombrowski* (1973) 413 U.S. 433, 439 [37 L.Ed.2d 706, 713].) "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." (*Bell v. Wolfish* (1979) 441 U.S. 520, 559 [60 L.Ed.2d 447, 481].) " '[Whether] a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case . . . .' " (*South Dakota v. Opperman* (1976) 428 U.S. 364, 375 [49 L.Ed.2d 1000, 1009].)

4

Warrantless searches are presumed to be unreasonable, " 'subject only to a few specifically established and well-delineated exceptions.' " (*People v. Diaz* (2011) 51 Cal.4th 84, 90.) One "recognized exception to the Fourth Amendment's proscription against warrantless searches is a search that is based upon consent." (*People v. Superior Court* (*Walker*) (2006) 143 Cal.App.4th 1183, 1198.)

"A consensual search may not legally exceed the scope of the consent supporting it." (*People v. Crenshaw* (1992) 9 Cal.App.4th 1403, 1408.) "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness -- what would the typical reasonable person have understood by the exchange between the officer and the suspect?" (*Florida v. Jimeno* (1991) 500 U.S. 248, 251 [114 L.Ed.2d 297, 302] (*Jimeno*).) The burden is on the prosecution to prove a warrantless search was within the scope of the consent given. (*People v. Cantor* (2007) 149 Cal.App.4th 961, 965.) " 'Whether the search remained within the boundaries of the consent is a question of fact to be determined from the totality of circumstances. [Citation.] Unless clearly erroneous, we uphold the trial court's determination.' " (*Ibid*.)

C. *Substantial Evidence Supports the Trial Court's Implied Finding That Defendant Consented to the Search of his Backpack*

Defendant contends his consent was limited to a patdown search of his person. He argues Deputy Peyton exceeded the scope of his consent when he picked up the backpack, opened it, and found the short-barreled shotgun inside. The People, for their part, argue it was objectively reasonable for Deputy Peyton to believe that defendant's backpack was included within the scope of his consent. We agree with the People.

"The scope of a search is generally defined by its expressed object." (*Jimeno, supra*, 500 U.S. at p. 251.) Here, the expressed object of the search was "weapons or

5

anything."[2]  Defendant consented to the search, saying that Deputy Peyton "could go ahead and check."  Defendant did not place any express limitations on the scope of the search.

"When an individual gives a general statement of consent without express limitations, the scope of a permissible search is not limitless.  Rather it is constrained by the bounds of reasonableness:  what a police officer could reasonably interpret the consent to encompass.  [Citation.]"  (*United States v. Strickland* (11th Cir. 1990) 902 F.2d 937, 941.)  We conclude Deputy Peyton could reasonably interpret the scope of defendant's consent to include his backpack.

Defendant was wearing the backpack when Deputy Peyton asked "if he had any weapons or anything on him."  Generally, when a police officer specifies the subject of a search, the scope of consent should be interpreted to include those areas where the officer might reasonably expect to find the items that are the subject of the search.  (See, e.g., *Jimeno, supra*, at p. 251 [consent to search for drugs in car "included consent to search containers within that car which might bear drugs"]; *People v. $48,715 United States Currency* (1997) 58 Cal.App.4th 1507, 1516 [consent to search for drugs "impliedly extended to any area where drugs could be hidden"]; see also *United States v. Romero* (10th Cir. 2007) 247 Fed.Appx. 955, 965 ["consent to search for specific items includes consent to search those areas and containers that might reasonably contain those items"].)  Here, a reasonable person would have understood that weapons and other contraband ("anything else") could be found in a backpack.  Thus, a reasonable person would have interpreted the scope of defendant's consent to encompass the backpack.

---

[2]  The record does not reveal what Deputy Peyton meant by the words "or anything."  We assume that they were intended to encompass other types of contraband that could be carried on or about defendant's person.

In the absence of any California authorities directly on point, we find support for our conclusion in an Oregon Court of Appeals case, *State v. Quale* (2009) 225 Or.App. 461 [201 P.3d 273] (*Quale*). In *Quale*, the police officer contacted the defendant wearing a backpack and walking on the side of the road in the early morning hours. (201 P.3d at p. 275) The defendant consented to a search for weapons. (*Ibid.*) The officer searched the defendant and found " 'a small piece of foil' " in his pocket. (*Ibid.*) The officer opened the foil and found a dark brown substance that was later identified as opium. (*Ibid.*) The officer read the defendant his *Miranda* rights and then asked for permission to search his backpack. (*Ibid.*) The defendant consented, and the officer found a metal spoon containing methamphetamine residue. (*Ibid.*)

On appeal, the defendant argued that the officer exceeded the scope of his consent by unfolding the foil in his pocket. (*Quale, supra*, 201 P.3d at p. 276.) The Oregon Court of Appeals agreed, noting there was no evidence in the record from which a reasonable person could conclude that the foil contained a weapon. (*Ibid.*)

Next, the defendant argued that the search of his backpack was the result of the unlawful search of the foil in his pocket. (*Quale, supra*, 201 P.3d at p. 277.) The Oregon Court of Appeals rejected the defendant's contention, noting that defendant's initial consent included consent to a search of the backpack. (*Id.* at pp. 277-278) As the Oregon Court of Appeals explained, "Defendant placed no limitations on his consent, so it extended to any place that weapons might be found, including his backpack." (*Id*. at p. 278; see also *People v. Jenkins* (2000) 22 Cal.4th 900, 975 ["open-ended consent to search normally does not suggest that the person consenting would expect the search to be limited in any way, and that a general consent to search includes consent to pursue the stated object of the search by opening closed containers"].) We find the *Quale* court's reasoning persuasive and likewise conclude that an objectively reasonable officer would have interpreted defendant's response to Deputy Peyton ("go ahead and check") as

consent to search carried containers in which weapons might be found, including his backpack.

Defendant contends he limited his consent by placing the backpack on the ground behind him. "A suspect may of course delimit as he chooses the scope of the search to which he consents. But if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." (*Jimeno, supra*, 500 U.S. at p. 252.) Defendant contends he implicitly excluded the backpack from the scope of his consent by placing it on the ground behind him. However, as the People observe, Deputy Peyton could have reasonably believed that defendant was taking the backpack off to facilitate the search. Deputy Peyton could have also believed that defendant's placement of the backpack on the ground behind him was noncommunicative, particularly since a person removing a heavy backpack from his shoulder might naturally tend to place the pack on the ground behind him. (See *People v. Miranda* (1993) 17 Cal.App.4th 917, 922 ["we view the record in the light most favorable to the trial court's ruling and defer to its findings of historical fact, whether express or implied, if they are supported by substantial evidence"].)

Furthermore, though defendant was not required to specifically object to the search of the backpack, his silence gave Deputy Peyton an additional reason to believe that the backpack was included within the scope of his consent. (See *United States v. Gordon* (10th Cir. 1999) 173 F.3d 761, 766 ["We consistently and repeatedly have held a defendant's failure to limit the scope of a general authorization to search, and failure to object when the search exceeds what he later claims was a more limited consent, is an indication the search was within the scope of consent"].) Under the circumstances, and viewing the record in the light most favorable to the trial court's ruling, we conclude that substantial evidence supports the trial court's implied finding that Deputy Peyton reasonably believed defendant consented to the search of the backpack he was carrying at

8

the time of contact, despite the fact that he subsequently removed the pack and placed it on the ground behind him.

Relying on the Second District Court of Appeal's opinion in *People v. Pellecer* (2013) 215 Cal.App.4th 508 (*Pellecer*), defendant argues that a reasonable person would have understood the question "if he had any weapons or anything on him" to refer solely to weapons or contraband on his person, and not to any such items in containers he may have been carrying. We disagree, and conclude that *Pellecer* is inapposite here.

In *Pellecer*, police officers responding to a burglary call found the defendant "leaning on a closed backpack" in a nearby park. (*Pellecer, supra*, 215 Cal.App.4th at p. 511.) Inside the backpack, officers found three shuriken throwing knives. (*Ibid.*) The defendant was convicted of carrying a concealed dirk or dagger on his person in violation of former section 12020, subdivision (a)(4), which provided criminal penalties for anyone who "[c]arries concealed upon his or her person any dirk or dagger." (*Id.* at pp. 512, 510; former § 12020, subd. (a)(4), now § 21310.)[3] The Court of Appeal reversed the conviction, emphasizing the distinction between the phrases " 'upon his or her person' " and " 'on or about the person.' " (*Pellecer,* at p. 513.) As the Court explained, "giving the words of [former section 12020, subdivision (a)(4)] their ordinary and usual meaning, a dirk or dagger inside an adjacent container, such as the backpack upon which defendant was leaning, or even inside a carried container, is not 'upon his or her person.' The knives in defendant's backpack may have been on or about defendant's person, but the statute does not criminalize carrying a dirk or dagger on or about the person, only carrying a dirk or dagger 'upon' the person." (*Ibid.*) Defendant's reliance on *Pellecer* is misplaced.

---

[3] Section 12020 was repealed effective January 1, 2012. (Stats. 2010, ch. 711, § 4.)

Defendant implies that Deputy Peyton requested consent to search "upon his person," thereby excluding the backpack from the scope of the search by analogy to *Pellecer*. However, there is nothing in the record to suggest that Deputy Peyton used either of the phrases discussed in *Pellecer*. Certainly, there is nothing to suggest that Deputy Peyton asked defendant if he had any weapons "upon his person." Instead, Deputy Peyton testified that he asked defendant "if he had any weapons or anything on him." On this record, the trial court could have reasonably concluded that an objectively reasonable person would have understood Deputy Peyton to be using the informal phrasal verb "[to] have (something) on (you)," which means "to be carrying (something)." (*Have*, Merriam-Webster Learner's Dictionary <http://www.learnersdictionary.com/definition/have> [as of Apr. 17, 2015]; see also *Have Something On You*, MacMillan Dictionary <http://www.macmillandictionary.com/us/dictionary/american/have-something-on-you> [as of Apr. 17, 2015] [defining "[to] have something on you" as "to be carrying something, for example in a pocket or bag"].) Although we do not believe that Deputy Peyton intended to invoke either of the formulations discussed in *Pellecer*, we note that the expression "[to] have (something) on (you)" encompasses carried containers, such as bags or backpacks, and is therefore closer to the phrase "on or about the person" (which would presumably include a carried container) than " 'upon his or her person' " (which would not). (*Pellecer, supra*, 215 Cal.App.4th at p. 513.) Thus, *Pellecer*, to the extent relevant at all, actually supports our conclusion that a reasonable person would have understood the question "if he had any weapons or anything on him" to encompass both his person *and* his backpack.

Defendant also argues for the first time in his reply brief that: (1) Deputy Peyton subjectively believed that defendant's consent was limited to a patsearch of his person; and (2) the search of the backpack constituted a separate, second search which required fresh consent. We do not consider arguments made for the first time in a reply brief. (*People v. Tully* (2012) 54 Cal.4th 952, 1075 ["It is axiomatic that arguments made for

10

the first time in a reply brief will not be entertained because of the unfairness to the other party"].) In any event, defendant's untimely arguments lack merit. We perceive nothing in the record to suggest that Deputy Peyton subjectively believed that defendant's consent was limited to a patsearch of his person. Likewise, there is nothing in the record to suggest that the search of the backpack constituted a separate, second search. Thus, we conclude that substantial evidence supports the trial court's implied finding that defendant consented to the search of his backpack.

Under the totality of the circumstances discussed *ante*, we affirm the trial court's denial of the suppression motion, although we base our conclusion on different grounds. Having concluded the search was justified by defendant's consent, we need not address whether defendant's probation status, the doctrine of inevitable discovery or probable cause constitute alternative bases for upholding the search.

II

*Pitchess Hearing*

Next, defendant asks us to conduct an independent review of the *Pitchess* proceedings to determine whether all relevant material was disclosed. Defendant's *Pitchess* motion requested pretrial discovery of all materials relating to illegal searches and seizures in Deputy Peyton's personnel records. The trial court (Judge Goodman) granted the motion and conducted an in camera hearing, but found there was no discoverable evidence.

We review the trial court's determination for an abuse of discretion. (*People v. Jackson* (1996) 13 Cal.4th 1164, 1220-1221.) We have reviewed the sealed record of the in camera proceedings and have determined that the custodian of records for the Sacramento County Sheriff's Department was duly sworn. We find the transcript sufficiently detailed, as each item produced was orally described for the record. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1229.) Upon review of the sealed transcript, we conclude that the trial court properly exercised its discretion in determining

11

that no documents existed within the scope of the *Pitchess* motion, and that no documents or information should be disclosed to the defense as a result of the review.

## DISPOSITION

The judgment is affirmed.

    BLEASE    , Acting P. J.

We concur:

    HULL    , J.

    BUTZ    , J.