Argued and submitted November 25, 2003, affirmed July 8, petition for review denied December 14, 2004 (337 Or 657)

## STATE OF OREGON,
*Respondent,*

*v.*

## JOHN WILLIAM HARVEY,
*Appellant.*

## 0110319CR; A117772

93 P3d 828

Rankin Johnson IV, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter A. Ozanne, Executive Director.

Paul L. Smith, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

Defendant appeals a judgment of conviction for possession of a controlled substance, ORS 475.992(4)(b), arguing that the trial court erred in denying a motion to suppress evidence obtained pursuant to a consent search. According to defendant, the search exceeded the scope of his consent in violation of Article I, section 9, of the Oregon Constitution. We affirm.

The relevant facts are not disputed. Officers DeLange and Alexander went to a residence as part of an unrelated robbery investigation. They knocked at the door, but there was no answer. DeLange walked to the side of the house, while Alexander waited at the front of the house. DeLange saw a parked car in the driveway, approximately 20 feet from the front porch of the house. Two persons were seated in the car; defendant was in the driver's seat, and a minor was in the passenger's seat. As he approached the car, DeLange noticed a "strong" odor of marijuana. DeLange asked the occupants of the car what they were doing, but, before they could answer, Alexander asked DeLange to return to the house. DeLange asked defendant and the passenger to come with him back to the house, and they agreed.

As DeLange and the occupants of the car returned to the house, Alexander said that he had found drug paraphernalia in the house. DeLange turned to defendant and asked whether he "could search the vehicle" that defendant was in. Defendant responded that it was not his car. DeLange told defendant that he was in control of the car and asked him again for consent to search it. Defendant said, "Go ahead." Defendant placed no limitations on the scope of his consent, nor did he revoke his consent at any point during the search that followed.

DeLange searched the car and found a backpack between the driver's and passenger's seats. He smelled marijuana, so he opened the backpack and discovered inside "a little black pull-tie velvet bag." DeLange opened the bag and found inside marijuana, a pipe, and what appeared to be packaging material. DeLange returned to the porch and

asked defendant about the bag. Defendant responded that the marijuana was his and that he "forgot it was in there."

Defendant was arrested for contributing to the delinquency of a minor and taken to jail. DeLange seized the velvet bag and took it back to Alexander's office. When Alexander returned to his office, he "inventoried" the velvet bag. He found inside the bag another pipe and a white chalky substance that appeared to be methamphetamine.

Defendant moved to suppress the evidence of the methamphetamine found inside the velvet bag. He argued, among other things, that the search of the bag was the result of an unlawful search of the backpack, which exceeded the scope of his consent to search the car. The state responded that the search of the backpack did not exceed the scope of defendant's consent and that emptying the contents of the velvet bag was merely a lawful inventory of personal effects.

The trial court denied the motion to suppress. The court concluded that defendant's consent to search the car was voluntary and unqualified and that, under the totality of the circumstances, "a backpack situated between the front seats of the vehicle would reasonably be included in a consent [to search the vehicle]." The court further concluded that "[o]nce arrested, [defendant's] property was subject to a standard inventory search. Because the 'pouch' could easily contain valuables it was subject to being opened and inventoried."

■ On appeal, defendant first contends that the trial court erred in concluding that the search of the backpack did not exceed the scope of his consent to search the car. He argues that DeLange made only a general request to search and did not identify what he and Alexander were looking for. A reasonable person, defendant argues, would not have understood that consent to search the car, in response to such a general request, included consent to look for drugs in closed backpacks. The state argues that because, under the circumstances, a reasonable person would have understood that DeLange was looking for drugs, defendant's consent included permission to search the car for containers that might hold drugs.

■■    We review the question whether a search exceeded the scope of consent as a matter of law, accepting the trial court's findings of fact when supported by evidence in the record. *State v. Jacobsen*, 142 Or App 341, 347, 922 P2d 677 (1996). The state bears the burden of establishing that a consent search was lawfully conducted and that any limitations on the scope of consent were complied with. *State v. Weaver*, 319 Or 212, 219, 874 P2d 1322 (1994).

■■    The scope of consent is not dependent on the subjective intent of the person granting consent but, rather, is determined by reference to what a "typical, reasonable person would have understood by the exchange between the officer and the suspect * * * in light of the totality of the circumstances surrounding the grant of consent in a particular case." *State v. Helow*, 171 Or App 236, 240-41, 15 P3d 103 (2000), *rev den*, 332 Or 56 (2001) (internal quotation marks omitted). When a request to search contains no limitations, and the defendant likewise places no limitations on the consent, the scope of that consent may be broad. *State v. Allen*, 112 Or App 70, 74, 826 P2d 127, *rev den*, 314 Or 176 (1992).

For example, in *State v. Charlesworth/Parks*, 151 Or App 100, 951 P2d 153 (1997), *rev den*, 327 Or 82 (1998), the police arrived at the defendant's home to execute a search warrant for the house. As they arrived, they saw the defendant back his car out of the driveway. The officers blocked the car and ordered the defendant to get out. After informing him that they had a search warrant for the house, one of the officers asked "if it was okay to search his car." Defendant said, "Yeah, go ahead." The officers found in the car a briefcase with zippered pockets. They removed the briefcase from the car, took it inside the house, and unzipped it. They examined the contents and found documents that contained information leading the police to discover evidence that the defendant had committed various crimes. The defendant moved to suppress the evidence obtained from the search of his car on the ground that opening the briefcase exceeded the scope of his consent. *Id.* at 113-14. We held:

> "[T]he officer's request to search [the defendant's] car contained no limitation on the proposed search. In agreeing to the request, [the defendant] placed no restriction on it. On

this record, we conclude that the consent to search the car included consent to search things found in the car."

*Id.* at 115.

Defendant insists that a lack of specificity in granting consent to search actually suggests a more limited scope and that, unless the officer specifies what it is he or she is looking for, a reasonable person would not understand that consent to search a vehicle includes consent to search closed containers in the vehicle. In support of that contention, defendant relies on *Jacobsen*.

*Jacobsen* does not stand for the broad proposition that defendant ascribes to it. In that case, an officer asked the defendant in the course of "casual * * * conversation" if he could "look" inside the cab of the defendant's truck. 142 Or App at 350. The defendant replied, "Sure" and handed the officer the keys. *Id.* at 343. Because of the casual nature of the conversation and because there was no suggestion from the circumstances that the officer was looking for anything in particular, we concluded that the defendant's consent did not extend to opening a zipped duffel bag that was found in the cab. *Id.* at 350.

We did not say that, in order for consent to search a vehicle to extend to containers within the vehicle, the officer must expressly specify the object of the search. Such a proposition would be directly contrary to *Charlesworth/Parks*. Instead, we said that, given the particular facts of that case—that is, the casual nature of the request merely to "look" around and the lack of any circumstances suggesting a more specific objective—a reasonable person would not understand the consent to include consent to search zipped duffel bags.

In this case, we confront no such "casual conversation" and no request merely to "look" around. DeLange asked for permission to search defendant's car. He did so in response to the fact that (1) defendant's car smelled strongly of marijuana and (2) Alexander had just told him—in defendant's presence—that he had located drug paraphernalia. A reasonable person in defendant's position would have understood that the object of DeLange's request was to search for

drugs and the scope of that request included any compartments or containers in the car that might hold them. In response, defendant said to "go ahead" and placed no restrictions on the scope of his consent. We therefore conclude that the trial court correctly determined that the search of the backpack did not exceed the scope of defendant's consent.

■     Defendant argues that, even if the state lawfully opened the backpack and the velvet bag that it contained at the time of the initial search, it remained unlawful for the state later to reopen the velvet bag at the police station and find in it the evidence of methamphetamine. Contrary to the trial court's determination, defendant argues, there is no evidence that the reopening of the velvet bag was accomplished pursuant to a lawful inventory policy.

The state concedes that the applicable inventory policy did not authorize the search of the velvet bag. It argues that, nevertheless, reopening of the bag was permissible in light of defendant's consent. We agree. *See State v. Luther*, 63 Or App 86, 89, 663 P2d 1261, *aff'd*, 296 Or 1, 672 P2d 691 (1983) ("Absent express revocation of an initial consent, *i.e.*, absent objection to a subsequent, closely related entry and search after the initial consensual entry and search, the permitted inference is that the initial consent continued.").

Affirmed.