Argued and submitted April 8, Madras High School, Madras, affirmed
June 17, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEAN LUC LAMOREUX,
*Defendant-Appellant.*

Washington County Circuit Court
C131541CR, C122328CR;
A155361 (Control), A155362

354 P3d 717

Morgen E. Daniels, Deputy Public Defender, argued the
cause for appellant. With her on the brief was Peter Gartlan,
Chief Defender, Office of Public Defense Services.

Susan G. Howe, Senior Assistant Attorney General,
argued the cause for respondent. With her on the brief were
Ellen F. Rosenblum, Attorney General, and Anna M. Joyce,
Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Judge,
and Tookey, Judge.

HADLOCK, J.

## HADLOCK, J.

In this consolidated criminal appeal, defendant appeals a judgment of conviction for unlawful possession of methamphetamine in violation of ORS 475.894 and for unlawful possession of heroin in violation of ORS 475.854 (Washington County case number C131541CR), and a judgment extending defendant's probation in another case, based on the new criminal conduct (Washington County case number C122328CR). In a single assignment of error, defendant challenges the trial court's denial of his motion to suppress evidence that a police officer discovered after defendant consented to a search of his car. Specifically, defendant argues that the officer's search exceeded the scope of defendant's consent in violation of Article I, section 9, of the Oregon Constitution. We conclude that the officer did not exceed the scope of defendant's consent by searching his closed backpack. Accordingly, we affirm.

We review whether a search exceeded the scope of an individual's voluntary consent for errors of law. *State v. Arroyo-Sotelo*, 131 Or App 290, 294, 884 P2d 901 (1994). We are bound by the trial court's findings of facts if the record includes constitutionally sufficient evidence to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). If the court did not make express findings of fact on a pertinent issue and the record includes evidence from which those facts could be decided more than one way, we presume that the court found the facts in a manner consistent with its ultimate conclusion. *Id.* We state the facts in light of those standards.

At approximately 1:00 p.m., Washington County Deputy Povolny pulled defendant over because the registration sticker on his license plate was expired. As part of the traffic stop, Povolny had dispatch run defendant's driver's license and learned that defendant was on probation for drug offenses. Povolny decided not to cite defendant for the traffic violation, but told him to check in with his probation officer concerning the traffic stop. Povolny did not inform defendant that he knew why defendant was on probation.

After telling defendant and his passenger that they were free to leave, Povolny casually asked defendant

if he could "search" his car. Povolny did not specify what he wanted to search for. Defendant said that would be "fine," and he and his passenger got out of the car. A few minutes later, the passenger left.

Povolny reiterated "a couple more times" that defendant was "free to go," and then began to search defendant's car, starting at the driver's door. At that time, defendant stood a close distance behind his vehicle near the curb. During the search, Povolny found a closed backpack on the backseat. Before opening the backpack, Povolny showed it to defendant and asked if it, and its contents, belonged to defendant. Defendant said that the backpack and its contents were his; he also mentioned that Povolny would find a marijuana pipe in the back seat. Povolny thanked defendant for his honesty and told him that he would not issue him a citation for the marijuana pipe. With defendant in "clear view," Povolny searched the backpack and found a small drawstring bag inside that contained drugs and drug paraphernalia. Povolny asked defendant what was in the bag and defendant replied, "speed." Povolny clarified with defendant that "speed" was methamphetamine. At no time did defendant revoke or narrow the scope of his consent to search his car.

Defendant filed a pretrial motion to suppress the evidence that Povolny had discovered inside his backpack, arguing that the deputy's search of the backpack was unlawful because it exceeded the scope of defendant's consent to search the car. The trial court denied that motion. The court found that defendant gave Povolny "broad consent" to search his car without any "qualifications." The court further found that defendant was located "approximately a foot away" from Povolny during the search and that "if he so chose, he could have at any point retracted his consent to search. And he didn't." Ultimately, the court concluded that "[t]he fact that the officer did not specifically say that this was a search for weapons, drugs, et cetera, does not negate the consent in this case."

Defendant then waived his right to a jury trial and proceeded to a stipulated facts trial. The trial court convicted defendant of unlawful possession of methamphetamine and

unlawful possession of heroin (Washington County case number C131541CR). The court also extended defendant's probation on a prior conviction (Washington County case number C122328CR).

On appeal, defendant contends that the trial court erred in concluding that the search did not exceed the scope of his consent. Specifically, defendant argues that the facts in this case are analogous to those in *State v. Jacobsen*, 142 Or App 341, 349-50, 922 P2d 677 (1996), in which we held that the defendant's consent to a police officer's generalized request to look in the cab of the defendant's truck did not authorize the officer to search a closed bag that he found in the truck. The state replies that, under the circumstances, a reasonable person would have understood the scope of defendant's consent to the officer's request to search his car to authorize a search of the car's contents, including closed containers. Further, the state contends that even if the scope of defendant's initial search did not include closed containers, defendant "manifested consent to the search [of his backpack] by his silence in the face of Deputy Povolny's subsequent" search.

Our analysis of the parties' arguments on appeal begins with a review of familiar principles. Article I, section 9, protects individuals against unreasonable searches and seizures. "A warrantless search violates Article I, section 9 * * * unless justified by an exception to the warrant requirement; consent is one such exception." *State v. Zamora*, 237 Or App 514, 518, 240 P3d 91 (2010), *rev den*, 350 Or 297 (2011). When the state relies on consent to support a search, it must prove by a preponderance of the evidence that the police officer conducting the search complied with any limitation on the scope of the defendant's consent. *State v. Fugate*, 210 Or App 8, 13, 150 P3d 409 (2006). The scope of consent does not depend on the subjective intent of the individual giving consent. *Id.* Rather, the scope of consent is determined by what "a typical, reasonable person would have understood by the exchange between the officer and the suspect in light of the totality of the circumstances surrounding the grant of consent in a particular case." *State v. Harvey*, 194 Or App 102, 106, 93 P3d 828, *rev den*, 337 Or 657 (2004) (internal quotation marks omitted). When a request to search has no

qualifications, and the defendant places no limitations on the consent, "the scope of that consent may be broad." *Id.*

A review of our "scope of consent" cases reveals two factors, pertinent to this case, that often play a significant role in our assessment of the "totality of the circumstances" surrounding the grant of consent. First, we have looked to the specific words used by the officer who requested consent, as well as the overall character of the interchange between the officer and the defendant. *See, e.g., Arroyo-Sotelo*, 131 Or App at 296 ("One of the best indicators of the intended scope of a search authorized by consent is the content of the request for consent.").

For example, in *Jacobsen*, we emphasized the casual nature of a conversation that a police officer had with the defendant, and the officer's use of the word "look" to describe what he wanted to do; that is, the officer asked the defendant if he could "look" inside the cab of the defendant's truck. 142 Or App at 343, 350. The defendant gave consent and the officer found incriminating evidence. *Id.* at 344. Given the casual nature of the conversation, the officer's use of the word "look," and the lack of any circumstances indicating that the officer was searching for particular items, we concluded that the defendant's consent to search did not extend to opening a zipped bag that was inside his truck. *Id.* at 350.

By contrast, in *Harvey*, we held that an officer's search of a backpack that was found in the defendant's car did not exceed the scope of his consent to search the car. 194 Or App at 108. In reaching that conclusion, we focused, in part, on the fact that—unlike the officer had in *Jacobsen*—the officer in *Harvey* did not make a "casual" request to merely "look" in the defendant's car. *Id.* at 107. Rather, the officer asked the defendant for permission to "search" his vehicle. Thus, the difference in content between the officer's request in *Jacobsen* and the officer's request in *Harvey* was important to the difference in outcome in those two cases.

The second factor that often is important to the "totality of circumstances" analysis is whether a reasonable person in the defendant's position would have understood that the officer seeking consent intended to search for particular items. "Generally, when a police officer specifies the

subject of a search, 'the scope of [the] consent * * * should be interpreted to include those areas where the items that are the subject of the search might be found.'" *State v. Baker/Jay*, 232 Or App 112, 128-29, 221 P3d 749 (2009), *rev den*, 348 Or 280 (2010) (brackets and ellipsis in *Baker/Jay*; citation omitted). However, it is *not* the case that, "in order for consent to search a vehicle to extend to containers within the vehicle, the officer must expressly specify the object of the search." *Harvey*, 194 Or App at 107. Rather, what matters is whether "a reasonable person would * * * understand the consent to include" authorization to conduct such a search. *Id.*

We applied that principle in *Harvey*. In that case, the defendant was seated in a car parked in the driveway of a house. *Id.* The car smelled strongly of marijuana, and the defendant knew—before he consented to a search—that a police officer had just located drug paraphernalia inside of the house. *Id.* Under those circumstances, we held, a reasonable person in the defendant's position "would have understood that the object of [the officer's] request was to search for drugs and the scope of that request included any compartments or containers in the car that might hold them." *Id.* at 107-08. Conversely, in *Jacobsen*, our holding that the officer's search of a duffle bag exceeded the scope of consent was based partly on the fact that the officer had not "indicate[d] that he was going to search for specific items that might be found in particular containers" like the bag. 142 Or App at 350. A key difference between those two cases, therefore, is that a reasonable person in the position of the *Harvey* defendant would have understood that the officer was seeking consent to search for drugs, including in closed containers, but a reasonable person in the position of the *Jacobsen* defendant had no reason to know what the officer intended to look for.

Both of the factors distinguishing *Harvey* from *Jacobsen*—the wording of the police officer's request and whether the defendant would have understood what the officer was looking for—are important here. First, although Povolny's conversation with defendant was casual in tone, he asked specifically for consent to "search" his car; he did not merely ask to "look" inside it. A reasonable person in

defendant's position would have understood a "search" to involve more than simply looking into the open areas of the car.

Second, the following circumstances lead us to conclude that a reasonable person in defendant's position would have understood that Povolny intended to search for evidence of drug crimes. When defendant gave Povolny consent to search his car, he was aware that Povolny knew that he was on probation. And defendant himself certainly would have known that he was on probation for drug crimes. Based on the conversation between Povolny and defendant, the trial court could reasonably infer that defendant would have perceived that Povolny not only knew that defendant was on probation, but also knew *why* defendant was on probation—for drug crimes. Additionally, at the time he gave consent, defendant was aware that Povolny would find the marijuana pipe on the back seat when he started to search the car. Based on those circumstances, a reasonable person in defendant's position would have understood that at least one object of Povolny's request was to search for drugs and, therefore, that the scope of that request included closed containers, located within the car, in which drugs might be found. Under *Harvey*, that consent was broad enough to justify Povolny's search of the backpack that he found in the car.[1]

In sum, the totality of the circumstances demonstrate that Povolny's search of defendant's backpack and its contents did not exceed the scope of defendant's consent. We

---

[1] This case differs from *Jacobsen*, on which defendant relies, in another important way. Here, after Povolny started searching the car—but before he opened the backpack—Povolny held up the backpack for defendant to see and asked if it belonged to him. At that time, defendant could have revoked his consent, but he chose not to. Rather, defendant verified that the backpack belonged to him, and then watched Povolny search the backpack without stopping him or making any objection. That event distinguishes this case from *Jacobsen*, in which the defendant did not see the officer opening the duffle bag and, therefore, "did not have an opportunity to object to him doing so." 142 Or App at 350. Rather, this case is more like those in which defendants who had consented to officers searching their property watched the officers conduct the searches and did not revoke or narrow the scope of their consent. *See, e.g., State v. Helow*, 171 Or App 236, 242, 15 P3d 103 (2000), *rev den*, 332 Or 56 (2001) (explaining significance of a person not objecting or withdrawing previously given consent when an officer conducting a consent search begins to open a container).

therefore reject defendant's argument that the trial court should have suppressed evidence found during that search pursuant to Article I, section 9.

We turn, briefly, to defendant's argument that the search violated the Fourth Amendment to the United States Constitution, which the state contends is not preserved for appeal. We need not decide the preservation question because, even if the Fourth Amendment argument were preserved for our review, we would reject it on the merits. Although defendant references the Fourth Amendment in his appellate brief, he does not contend that the analysis under that federal constitutional provision would differ from the analysis under Article I, section 9. Because we have rejected defendant's argument under Article I, section 9, it follows that we would reject the Fourth Amendment argument as he has presented it.

Affirmed.