Submitted January 20, reversed and remanded May 25, petition for review allowed September 15, 2016 (360 Or 400)
See later issue Oregon Reports

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**DANNY LEE BLAIR,**
*Defendant-Appellant.*

Tillamook County Circuit Court
131055; A156756

380 P3d 313

Peter Gartlan, Chief Defender, and Laura E. Coffin, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Karla H. Ferrall, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

## DEHOOG, J.

Defendant appeals a judgment of conviction for one count of possession of a Schedule I controlled substance, ORS 475.752(3)(a), entered upon his conditional no contest plea. He assigns error to the trial court's denial of his motion to suppress evidence found during a warrantless search of his backpack and a closed grocery bag within the backpack. Defendant argues that the state did not prove that he voluntarily consented to the search, or, if he did voluntarily consent to the search of his backpack, that the scope of his consent extended to the closed bag inside. We need not address whether defendant's consent to the search of his backpack was voluntary, because, in any event, the state did not meet its burden of establishing that any such consent extended to the closed bag within the backpack. Because we conclude that the trial court erred in denying defendant's motion to suppress, we reverse and remand.

We take the relevant facts in this case, which are simple and undisputed, from the suppression hearing. On March 12, 2013, the Tillamook County undersheriff and several sheriff's deputies responded to a report that armed suspects were chasing a man in a public park. Upon arriving at the scene, they found defendant, the alleged victim of the attack, who was very unkempt, dirty, and scratched. He appeared to have run through a blackberry patch and to have been digging in the dirt with his hands. Initially, "[h]e was agitated. He couldn't hold still, fidget[ed] a lot, [and] couldn't respond to questions completely." Based upon defendant's demeanor and the circumstances, the responding officers suspected that the story about an armed attack "was probably not completely true."

While speaking with the officers, defendant mentioned that he had "left some stuff up at the park, [including] a backpack, and had lost his sweatshirt." Sergeant Jackson suggested, "let's [not] lose your stuff," and, because defendant did not want to retrieve his backpack alone, Jackson went with him to find it. Defendant became "a little more coherent" as he walked with Jackson, and he was able to locate his backpack without difficulty.

After finding the backpack, Jackson asked defendant whether he could search it. Defendant responded, "[Y]eah, go ahead." Jackson opened the backpack and found within it a knotted, opaque, Fred Meyer grocery bag. Upon opening that bag, Jackson found a Ziploc bag containing psilocybin mushrooms. Defendant saw Jackson remove the Ziploc bag, at which point defendant said, "[S]hit, those aren't mine."

The state charged defendant with unlawful possession of a Schedule I controlled substance. Defendant moved pretrial to suppress the mushrooms found during the warrantless search of his backpack and initially argued only that his consent to the search had been involuntary, because he had been under the influence of hallucinogenic mushrooms at the time it was given. At the suppression hearing, defendant added, without objection from the state, that, even if he had voluntarily consented to the search of his backpack, Jackson had exceeded the scope of his consent by opening the closed bag within the backpack.

At the hearing, Jackson described the events detailed above and testified that the overall atmosphere of his encounter with defendant leading up to the search had been "amicable." Jackson had not used or threatened physical force, and he had not yelled at defendant. He said that he had displayed his badge and, most likely, his firearm, but that he had not been in uniform. Jackson explained that, at some point during the encounter, he had begun to suspect that defendant was under the influence of methamphetamine and experiencing delusions. As a result, when he had asked whether he could search defendant's backpack, he had intended to look for weapons and controlled substances. However, Jackson had not conveyed to defendant his intent to look for those things.

Defendant presented the testimony of a toxicology expert, Meneely, who had reviewed Jackson's report and watched a recording of an interview with defendant. Meneely testified that defendant's behavior had been consistent with that of a person under the influence of psilocybin mushrooms and that a person thus affected might not have been able to understand what was happening around him or even

grasp reality. Meneely further testified that, in his opinion, a person under the influence of psilocybin mushrooms does not have the "rational decision making" ability to consent to a legal request. When asked whether the use of psilocybin mushrooms could lead to various states of intoxication, Meneely testified, "It's uncontrollable * * * [and the] effects are extremely variable with the personality of the person. It's—the best term is unpredictable."

At the conclusion of the hearing, the trial court denied defendant's motion to suppress. The court concluded that defendant had voluntarily consented to the search of his backpack, despite any apparent drug use. With regard to the scope of consent, the trial court reasoned that defendant was "there when [the backpack was] searched and the consent wasn't revoked." Therefore, the court determined that Jackson had not exceeded the scope of defendant's consent by opening the Fred Meyer bag. Following that ruling, defendant entered a conditional no contest plea pursuant to ORS 135.335 (authorizing conditional pleas), and the court entered a judgment of conviction for possession of a Schedule I controlled substance.

On appeal, defendant assigns error to the denial of his motion to suppress and reprises the two arguments he made to the trial court. The state counters that, based on the totality of the circumstances, the trial court did not err in concluding that defendant was sufficiently coherent to give voluntary consent and that, because defendant neither withdrew his consent nor limited its scope, his consent implicitly encompassed the entire backpack, including any closed containers within it. We conclude that the trial court erred in determining that defendant's consent encompassed the grocery bag within his backpack. Due to our conclusion that suppression is required because Jackson's search exceeded the scope of defendant's consent, we do not address defendant's argument regarding voluntariness.

The Oregon Constitution guarantees persons the right to be free from unreasonable searches. Or Const, Art I, § 9; *see State v. Davis*, 295 Or 227, 229 & n 4, 666 P2d 802 (1983). A warrantless search is presumptively unreasonable. *Davis*, 295 Or at 237. However, a warrantless search is not

unreasonable if it is authorized by a recognized exception to the warrant requirement; voluntary consent is one such exception. *State v. Bea*, 318 Or 220, 229, 864 P2d 854 (1993). When the state relies on consent to justify a warrantless search, it bears the burden of establishing that it complied with any limitations on the scope of consent. *State v. Harvey*, 194 Or App 102, 106, 93 P3d 828, *rev den*, 337 Or 657 (2004). Thus, under Article I, section 9, we must evaluate whether defendant's consent to a search of his backpack, if voluntarily given, also authorized an intrusion upon defendant's separate privacy interest in the closed container within the backpack. *Cf. State v. Delong*, 275 Or App 295, 301, 365 P3d 591 (2015), *rev den*, 359 Or 39 (2016) ("Article I, section 9, of the Oregon Constitution protects a person's separate privacy interests in a vehicle and in items within that vehicle."). We review that question for legal error. *Id.* at 300.

"The scope of consent is determined by reference to what a typical, reasonable person would have understood by the exchange between the officer and the suspect in light of the totality of the circumstances surrounding the grant of consent in a particular case." *Id.* at 301 (internal quotation marks and alterations omitted).[1] Thus, consent to search a particular location or item extends to closed containers found within that location or inside of that item if, under the totality of the circumstances, a reasonable person would have understood that the consent given included those containers. *See id.*; *Harvey*, 194 Or App at 106. That inquiry is fact specific, and we consider, among other factors, the specific request made, the stated object of the search, and the surrounding circumstances. *Delong*, 275 Or App at 301 (describing those factors); *State v. Fugate*, 210 Or App 8, 13, 150 P3d 409 (2006) (same); *State v. Jacobsen*, 142 Or App 341, 349-50, 922 P2d 677 (1996) (same).

Those factors help establish the scope of consent, because they indicate what the requesting officer was looking for and, therefore, the areas that a person might reasonably

---

[1] In recent decisions, we have also articulated this test as what "a reasonable person in the defendant's position would have understood to be included based on the circumstances." *Delong*, 275 Or App at 302 (internal quotation marks and alternations omitted); *see also State v. Lamoreux*, 271 Or App 757, 763, 354 P3d 717 (2015). We perceive no meaningful distinction between these standards.

have expected to be searched when consent was given. If an officer could not reasonably have expected the items sought to be found within a given location, no reasonable person would have understood consent to extend to that location. *See Delong*, 275 Or App at 302 ("[A] general request for consent to search a car does not extend to closed containers in the car if no other circumstances reasonably indicate that the officers are searching for something that could be hidden in those containers."); *Jacobsen*, 142 Or App at 349-50 (officer's exchange with subject was general and casual and did not indicate that officer was searching for specific items; a reasonable person would have understood consent to authorize only basic sweep of subject's truck and not entry into a closed duffel bag).

Among those factors, the specific content of the officer's request is "[o]ne of the best indicators" of the authorized scope of a search. *Delong*, 275 Or App at 301 (internal quotation marks omitted). Several cases illustrate the significance of the officer's request to the determination of scope of consent. In *State v. Allen*, 112 Or App 70, 75, 826 P2d 127, *rev den*, 314 Or 176 (1992), we concluded that the defendant's consent to a search of his car extended to a closed suitcase found in the car's trunk due, in large part, to the fact that, in requesting permission to search the car, the officer told the defendant that he wanted to look for weapons, money, and narcotics. Because the suitcase could contain those items, we concluded that a reasonable person viewing the exchange would have understood that the defendant's consent extended to that suitcase. *Id.* at 74-75.

Similarly, we relied heavily on the specific exchange between the officer and the defendant in *Jacobsen*, but reached the opposite result. 142 Or App at 349-50. In that case, an officer approached the defendant when he noticed the defendant's truck in a public park after closing. *Id.* at 343. The officer asked the defendant, who had been sleeping in the bed of the truck, "'[W]ould you mind if I look * * * inside the cab?'" *Id.* at 350 (second alteration in original). In concluding that the defendant's general consent to that request did not authorize the search of a closed duffel bag within the cab, we noted that the officer's request was general in nature and "did not indicate that [the officer] was

going to search for specific items that might be found in particular containers such as the zipped duffel bag." *Id.* at 349-50. We therefore concluded that "[a]n objectively reasonable person would have understood defendant's consent to authorize [only] a more general sweep of the truck's cab." *Id.* at 350.

In this case, we similarly focus on Jackson's specific request in determining the scope of defendant's consent. The record does not disclose the specific words that Jackson used to request permission to search defendant's backpack. Jackson simply testified, "[W]hen we got to the pack, I asked if I could search the pack. He readily agreed and said, 'yeah, go ahead.'" Significantly, Jackson did not expressly identify the objects of his search to defendant. Where the specific terms of an officer's request are vague or unavailable, the other, circumstantial factors—including whether the surrounding circumstances would reasonably have alerted a person to what the officer was looking for—take on heightened significance. *See State v. Winn*, 278 Or App 460, 466, 375 P3d 539 (2016); *see Delong*, 275 Or App at 302 (content of a request for consent may be implied by the circumstances).

For example, in *Harvey*, we concluded that the defendant's consent to a search of his car included consent to search a backpack and velvet pouch found in the car, even though the officer's request was not specific. 194 Or App at 107-08. Like Jackson in this case, the officer in *Harvey* made a general request—in that case, to search the defendant's car. *Id.* at 107. And, much like defendant in this case, the defendant in *Harvey* responded, "[G]o ahead." *Id.* at 108. But notwithstanding the officer's open-ended request in *Harvey*, we concluded that it was clear from the surrounding circumstances that the officer intended to look for evidence of drug use. *Id.* at 107-08. The officer requested consent to search the defendant's car, because it smelled strongly of marijuana while the defendant was in it and because another officer, in the defendant's presence, told the first officer that he had found drug paraphernalia in the defendant's home. *Id.* at 107. Under those circumstances, we concluded that a reasonable person viewing the exchange would have understood that the reason the officer wanted to search the defendant's car was to look for drugs or drug paraphernalia. *Id.* at 107-08.

Because such items could readily have been concealed in the backpack and velvet bag found within the car, the defendant's general consent to the search of his car extended to those closed containers. *Id.*

The state argues that the circumstances in this case are similar to those in *Harvey* and, therefore, that we should conclude that defendant's general response to Jackson's open-ended request authorized the search of the bag within his backpack. In support of that contention, the state points out that we have previously said that the scope of consent "may be fairly broad" when an officer's request to search contains no express limitations and an individual's response, likewise, places no limitations on the search. *See Allen,* 112 Or App at 74-75 (so stating); *see also Harvey,* 194 Or App at 104-05, 107-08 (defendant's general response to officer's open-ended request granted broad consent to search under the circumstances). However, in light of the well-established methodology for determining the scope of consent outlined above, we do not view that broad principle as a license to forgo the analysis most recently articulated in *Delong. See* 275 Or App at 300-06. In fact, even though *Delong* itself acknowledged that principle, it also noted that "an officer's open-ended request for consent to search a car *** does not necessarily give an officer unfettered permission to search containers within the car." 275 Or App at 302.

Here, in contrast to *Harvey,* the record fails to disclose anything said to, or in the presence of, defendant that would have led a reasonable person in his position to understand that Jackson was looking for something that could have been hidden in the closed grocery bag in his backpack. Jackson testified that, at some point before the search, he had begun to suspect that defendant was under the influence of a controlled substance, due to his irrational behavior, jumbled speech, and the lack of corroborating evidence to support defendant's story of an armed attack. Jackson further testified that his purpose in searching defendant's backpack had been to look for drugs and weapons. However, Jackson did not convey to defendant that he was looking for those items. Because Jackson did not communicate his suspicions or tell defendant what he was looking for, his subjective intent has no bearing on how a reasonable person viewing the exchange

would have understood the scope of defendant's consent. *See Delong*, 275 Or App at 302 ("If a request for consent is vague or the law enforcement officer does not specify the target of the search, the request for consent extends to objects and areas that a *reasonable person in the defendant's position* would have understood to be included based on the circumstances." (Internal quotation marks and alterations omitted; emphasis added.)). Significantly, other than the backpack itself, the only item that either Jackson or defendant expressly identified was defendant's lost sweatshirt. And Jackson's only openly stated objective was that they not "lose [defendant's] stuff." So while a person observing the encounter might reasonably have concluded that Jackson was checking defendant's bag to determine whether it contained the lost sweatshirt, nothing about the exchange conveyed that Jackson would be looking for small items, like drugs, that might have been in the knotted bag. *Cf. Winn*, 278 Or App at 469-71 (where warning signs prohibited firearms and other dangerous weapons, reasonable person would likely conclude ensuing search would be for those items, not drugs).

This case is more like *Delong*, in which we reasoned that a general exchange between an officer and the defendant had not given the defendant any reason to know that the officer was looking for drugs. 275 Or App at 304-05. In that case, an officer handcuffed the defendant after a traffic stop for a seat belt violation and asked him if there was anything in the car that the officer "should be concerned about." *Id.* at 298-99. The defendant said that there was not and told the officer that he could search the car. *Id.* at 299. In the ensuing search, the officer found and opened a fanny pack that contained drug paraphernalia. *Id.* We agreed with the defendant that the search of the fanny pack exceeded the scope of his general consent to the search of the car. *Id.* at 304-06. That, we explained, was because the circumstances surrounding the officer's request had not suggested that the officer would be looking for small items like drug paraphernalia, which could fit in the fanny pack, and because the officer's general question "regarding anything of concern in the car did not reasonably communicate that he [was] interested in looking through closed containers in the car for drugs." *Id.*

As in *Delong,* nothing about the surrounding circumstances in this case would have alerted a reasonable person in defendant's position that Jackson intended to look for drugs or related evidence. *See id.* at 303 ("When the officer does not specify the objects of the search, the same 'reasonable person would have known' standard can be met if other circumstances reasonably indicated to the person giving consent what those objects were."). The officers had responded to defendant's report that he was being chased by armed assailants. Jackson testified that, during his initial conversation with defendant, defendant had confirmed that report and pointed out where the purported chase had taken place. Following that discussion, Jackson had accompanied him to retrieve his backpack and ensure that it did not get lost. The encounter was friendly and nonconfrontational and would not have put defendant on notice that he was the one under investigation. *See Harvey,* 194 Or App at 107-08 (noting exchange was not a casual conversation before concluding that reasonable person would have understood that officer had an investigative purpose and intended to look in closed containers in car); *Jacobsen,* 142 Or App at 349-50 (fact that exchange between officer and defendant was a "casual 'basic conversation'" was relevant to question of how a reasonable person would have understood scope of consent). And, as we have already noted, without some indication that a person in defendant's circumstances would reasonably have known that Jackson suspected him of methamphetamine use, that subjective suspicion has no bearing on the scope of defendant's consent. *See State v. Lamoreux,* 271 Or App 757, 762-63, 354 P3d 717 (2015).

Although the trial court did not expressly engage in the foregoing analysis, the court did identify one factor that we have considered in determining the scope of consent: defendant's failure to revoke consent when Jackson opened the closed grocery bag. *See State v. Arroyo-Sotelo,* 131 Or App 290, 298, 884 P2d 901 (1994) (considering failure to withdraw consent as part of the totality of circumstances relevant to scope of consent); *Allen,* 112 Or App at 75 (same). But a person's failure to withdraw consent must be considered in light of the totality of the circumstances and not in isolation. For example, in *Allen,* the defendant knew that the

officers were looking for drugs, weapons, and money; agreed to let them search his car; opened the trunk for that purpose; and identified the suitcase that they then searched as his own. 112 Or App at 74-75. Under those circumstances, we reasoned that the defendant's failure to object to a search of his suitcase when he had a clear opportunity to do so was evidence that his general consent to search the car extended to the suitcase it contained. *Id.* But it was not the defendant's failure to withdraw his consent, standing alone, that determined the scope of his consent. *See id.* In this case, unlike in *Allen*, there was no indication that defendant knew that Jackson was going to open the bag inside of his backpack or that defendant had a meaningful opportunity to prevent Jackson from opening that bag. In such circumstances, we cannot conclude that defendant's failure to object indicated his consent to that part of the search. *See Arroyo-Sotelo*, 131 Or App at 298 (concluding that defendant's failure to revoke consent was immaterial when record failed to disclose that he had an opportunity to do so).

The state did not introduce any evidence that Jackson's request or the surrounding circumstances indicated to defendant that Jackson intended to search for items of such size as to justify an intrusion into a small, opaque grocery bag. And, as previously noted, when the state relies on consent to support a search, it has the burden to show that the officer who conducted the search complied with any limitations on the scope of consent. *Delong*, 275 Or App at 300; *see Jacobsen*, 142 Or App at 350 ("[L]ack of evidence goes against the state, because it has the burden of proving the lawfulness of the search."). Therefore, based on the facts in evidence, we cannot conclude that a reasonable person viewing the exchange would have understood that defendant consented to the search of the closed Fred Meyer bag within his backpack. Accordingly, we conclude that the trial court erred in denying defendant's motion to suppress the evidence obtained from that illegal search.

Reversed and remanded.