Argued and submitted April 21, 2015, reversed and remanded May 25, petition for review allowed September 15, 2016 (360 Or 400)
See later issue Oregon Reports

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KAYLAN MICHELLE WINN,
*Defendant-Appellant.*

Marion County Circuit Court
12C46360; A154313

375 P3d 539

Emily P. Seltzer, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Michael S. Shin, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

**SERCOMBE, P. J.**

Defendant appeals a judgment of conviction for possession of methamphetamine, ORS 475.894. She assigns error to the trial court's denial of her motion to suppress evidence obtained during the search of a makeup compact in her purse. Defendant argues that the evidence was discovered in an unreasonable search in violation of Article I, section 9, of the Oregon Constitution. The state argues that the evidence was lawfully obtained because defendant consented to the search of her purse, and the scope of her consent included an examination of the inside of the makeup compact. On review for errors of law, *State v. Arroyo-Sotelo*, 131 Or App 290, 295, 884 P2d 901 (1994), we conclude that the search violated Article I, section 9, and, accordingly, reverse and remand.

"In reviewing a denial of a motion to suppress, we are bound by the trial court's findings of historical fact that are supported by evidence in the record." *State v. Holdorf*, 355 Or 812, 814, 333 P3d 982 (2014). To the extent that the trial court did not make findings of fact, where there are facts that could be decided in more than one way, we presume that the court made factual findings consistent with its ultimate conclusion. *Id.* We state the facts in accordance with those standards.

As defendant entered the Marion County Juvenile Department court facility, DePaul Security Officer Spencer-Wold[1] requested that defendant place her personal property on a conveyer belt in order to pass it through an x-ray scanner, and defendant placed her purse on the conveyer belt. There were signs on the wall advising entrants to the courthouse that they were subject to search and that firearms or dangerous weapons were prohibited in the building.

As defendant's purse passed through the x-ray scanner, Spencer-Wold noticed items in the purse that appeared to be a makeup compact and a spoon, which she thought might be drug paraphernalia. She asked defendant, "May I please run [the purse] through [the x-ray scanner] a second time?"

---

[1] DePaul is a private company that contracts with the Marion County Sheriff's Office to provide security services for Marion County court facilities.

Defendant agreed. After scanning the purse again, she asked defendant, "[M]ay I please search your purse?" Defendant replied, "Yes." Spencer-Wold found an opaque makeup compact in the purse, and she opened it to find a "small baggie with a powdery substance in it." Defendant stood nearby as Spencer-Wold searched her purse and opened the makeup compact, and made no objection to the search.

Defendant was charged with possession of methamphetamine. Before trial, she moved to suppress the evidence of methamphetamine found inside the makeup compact, arguing that the warrantless search of the purse and makeup compact violated her rights under Article I, section 9. She contended that the administrative search was unlawful because it was not conducted pursuant to a valid administrative search policy and that no other exception to the warrant requirement applied.[2] *See State v. Snow*, 247 Or App 497, 504, 268 P3d 802 (2011) (setting out requirements for the reasonableness of administrative searches conducted pursuant to an administrative search policy). In response, the state argued that the administrative search was authorized by a valid policy and that, even if it was not so authorized, it was nevertheless permissible because defendant consented to the search of her purse. Defendant rejoined that, even if she validly consented to a search of her purse, her consent was not broad enough to include the makeup compact.

Following a hearing, the trial court denied defendant's motion to suppress. The court explained its reasoning in a letter opinion:

"This matter is before the court on the defendant's motion to suppress a search of her purse and in particular an opaque

_____

[2] The parties identified two administrative search policies under which the search was performed: the Marion County Sheriff's Office Judicial Security Unit Front Entrance Security Policy (Sheriff's Policy) and the DePaul Security Post Orders (DePaul Policy). Among other things, the Sheriff's Policy required that all persons entering the building "must be screened before entering beyond the screening point" and explained that people who refuse to be screened "will not be allowed access to the building." It further required that "[t]he screener will always ask before checking items by hand." Similarly, the DePaul Policy mandated that "[a]ll hand carried items entering the facility must be screened" and that "[t]he screener must ask for and receive consent before looking in any purse, backpack, bag or enclosed item."

compact contained in the purse. This search was conducted at the front door of the Marion County Courthouse pursuant to security directives.

"In general all hand carried items are searched. In this instance the security person requested of the defendant to search her purse and defendant gave her unqualified consent. After receiving the consent, the purse and an opaque compact contained therein were searched and contraband was found in the compact. This court had a question: did the consent to search the purse extend to the compact?

"The court has now been provided with two cases holding that if the defendant placed no restriction on the search, then consent to search included all things contained in the purse including the compact; *State v. Charlesworth/Parks*, 151 Or App 100 (1997), and *State v. Allen*, 104 Or App 519 (1990). Based upon the foregoing the search is found to be valid."

Defendant was subsequently found guilty by the court on stipulated facts and convicted of possession of methamphetamine.

On appeal, the parties largely reiterate the arguments that they made to the trial court. Defendant contends that the search of her makeup compact was not a valid administrative search because it was conducted pursuant to an unconstitutional administrative search policy. Defendant further argues that, even if the administrative search policy was valid, the policy required consent for any inspection of an "enclosed item." Defendant concludes that the scope of her consent to a search of her purse was not broad enough to give Spencer-Wold permission to search her makeup compact found within the purse.

The state agrees that the validity of the search depends on whether defendant consented to it without regard to whether that prerequisite is required by the administrative search policy or the constitution. Thus, the state argues that the search was permissible because defendant's consent was voluntary and broad enough in scope to allow Spencer-Wold to search the makeup compact. Specifically, the state contends that, because defendant gave "unqualified consent" in response to a "general request" to search her purse, her consent extended to all closed containers within

the purse, including the makeup compact. The state further asserts that defendant's failure to "clarify" or "withdraw her consent before Spencer-Wold opened the compact" indicates that defendant consented to the search of the compact.

We conclude that the search of the makeup compact was unlawful because it was not authorized by defendant's consent. Accordingly, we need not address defendant's argument that the search was otherwise unlawful because it was conducted under an invalid administrative search policy.

Normally, in order to be constitutionally permissible, a search must be conducted pursuant to a warrant. *State v. Paulson*, 313 Or 346, 351, 833 P2d 1278 (1992). However, evidence obtained during a warrantless search "is not suppressed unless the search was 'unreasonable' under Article I, section 9, of the Oregon Constitution." *Id.* A warrantless search is reasonable when the search "falls into one or another of the recognized exceptions to the warrant requirement." *Id.* A defendant's consent to a search is a recognized exception to the warrant requirement. *State v. Lamoreux*, 271 Or App 757, 760, 354 P3d 717 (2015).

"When the state relies on consent to support a search, it must prove by a preponderance of the evidence that the police officer conducting the search complied with any limitation on the scope of the defendant's consent." *Id.* The scope of consent is determined based upon what "a typical, reasonable person would have understood by the exchange between the officer and the [defendant] * * * in light of the totality of the circumstances surrounding the grant of consent in a particular case." *State v. Delong*, 275 Or App 295, 301, 365 P3d 591 (2015), *rev den*, 359 Or 39 (2016) (internal quotation marks omitted). "The specific request that the officer made, the stated object of the search, and the surrounding circumstances all bear on our determination of the scope of a person's consent." *Id.* (internal quotation marks omitted).

In evaluating the totality of the circumstances, we pay careful attention to "specific words used by the officer who requested consent, as well as the overall character of the interchange between the officer and the defendant." *Lamoreux*, 271 Or App at 761. When an officer requests

consent to search for specific items and the defendant consents, the scope of the defendant's consent will include the areas where those specific items might be concealed. *Arroyo-Sotelo*, 131 Or App at 297; *see also State v. Helow*, 171 Or App 236, 241-42, 15 P3d 103 (2000), *rev den*, 332 Or 56 (2001) (concluding that unfolding a folded piece of paper discovered in defendant's purse was within the scope of defendant's consent where the officer requested to search defendant's car for "checks"); *State v. Allen*, 112 Or App 70, 72, 74-75, 826 P2d 127, *rev den*, 314 Or 176 (1992) (concluding that the scope of defendant's consent extended to a suitcase in the trunk of the car where defendant gave consent in response to the officer's request to search defendant's car for "weapons, narcotics or large sums of money").

In contrast, if the officer makes a "vague" request for consent or "does not specify the target of the search," we evaluate the circumstances surrounding the request to determine what "'a reasonable person in [the] defendant's position would have understood' to be included based on the circumstances." *Delong*, 275 Or App at 302 (quoting *Lamoreux*, 271 Or App at 763) (brackets in *Delong*). A defendant's consent to a general request to search his or her property will not authorize an officer to open closed containers within that property unless the surrounding circumstances would indicate to a reasonable person in the defendant's position that the officer was searching for something that might be found inside those closed containers. *See id.* ("[A] general request for consent to search a car does not extend to closed containers in the car if no other circumstances reasonably indicate that the officers are searching for something that could be hidden in those containers.").

With those standards in mind, we begin by examining the "specific words" and the "overall character of the interchange" between defendant and Spencer-Wold. *Lamoreux*, 271 Or App at 761. The conversation between defendant and Spencer-Wold was brief. Spencer-Wold asked defendant, "[M]ay I please search your purse?" Defendant responded, "Yes." There was nothing about the specific words used by either party to that conversation that disclosed the target of the search. Spencer-Wold did not ask if she could search for particular items—such as drugs or weapons—so

as to indicate where she might search. *See, e.g., Helow*, 171 Or App at 241-42 (request to search for checks). Further, the only item that Spencer-Wold asked to search was the purse itself, not closed containers that it might contain, and, although Spencer-Wold became suspicious of the compact before she asked for defendant's consent, there was nothing in her question that would have conveyed that suspicion to defendant.

The state argues that Spencer-Wold's request to "search" defendant's purse, rather than to simply "look" through it, would have implied to defendant that she intended to conduct a thorough examination of the purse and all of its contents, including all closed containers. In past cases, we have distinguished casual requests to "look" inside something, which suggest an intent to conduct a more limited search, from more formal requests to "search" something, which suggest an intent to conduct a more thorough examination. *Compare State v. Jacobsen*, 142 Or App 341, 350, 922 P2d 677 (1996) (request to "look" inside the cab of defendant's truck authorized only a "general sweep" of defendant's truck which did not include opening a closed bag, in part, because of the casual nature of the officer's request), *with State v. Harvey*, 194 Or App 102, 107-08, 93 P3d 828, *rev den*, 337 Or 657 (2004) (distinguishing the officer's request to "search" defendant's car from the casual request in *Jacobsen*), *and Lamoreux*, 271 Or App at 762-63 (relying on *Harvey* and explaining that "[a] reasonable person in defendant's position would have understood a 'search' to involve more than simply looking into the open areas of the car").

The state is correct that Spencer-Wold's use of the word "search" reasonably suggested that she intended to perform an examination of defendant's purse more extensive than a quick perusal. However, where, as here, the officer's request to search neither explicitly nor implicitly specifies an objective of that search, the mere fact that the officer asked to "search" defendant's purse is not enough to allow a reasonable person to infer that the scope of that request extended beyond an outward examination of the contents of the purse. For example, the scope of a defendant's consent to a thorough "search" for drugs will extend to smaller

containers than consent to a thorough "search" for firearms. *See Arroyo-Sotelo*, 131 Or App at 297 ("[T]he scope of a consent search generally should be interpreted to include those areas where the items that are the subject of the search might be found."). Thus, the fact that a reasonable person in defendant's position might have understood her consent to authorize a somewhat invasive search of her purse does not tell us whether defendant's consent extended to the makeup compact.

The state nonetheless contends that defendant's consent was broad solely because it was "unqualified." The state relies on the principle that "[w]hen a request to search contains no limitations and a defendant places no limitation on the search, the scope of the allowable search may be fairly broad." *Allen*, 112 Or App at 74; *see also State v. Charlesworth/Parks*, 151 Or App 100, 114-15, 951 P2d 153 (1997), *rev den*, 327 Or 82 (1998) (same); *State v. Allen*, 104 Or App 519, 802 P2d 91 (1990), *rev den*, 311 Or 261 (1991) (defendant's grant of consent to search her purse allowed the officer to search a tin box found inside defendant's purse because the "request to search defendant's purse contained no limitations, and she did not place any restrictions on her consent").

But, as earlier noted, the scope of a consent is determined not just by the "specific words" of the request and the consent, but also the "overall character of the interchange between the officer and the defendant." *Lamoreux*, 271 Or App at 761. As we explained in *State v. Blair*, 278 Or App 512, 519, 380 P3d 313 (2016), also decided today, "in light of the well-established methodology for determining the scope of consent * * *, we do not view that broad principle [of the scope of a consent as affected by its lack of qualification] as a license to forgo" an analysis of the totality of the circumstances to determine what a typical, reasonable person would have believed the scope of a request and consent to include. Rather, an unqualified response to a general request for consent will authorize law enforcement officers to open closed containers inside a defendant's property only where the circumstances reasonably indicate "that the officers are searching for something that could be hidden in those containers." *Delong*, 275 Or App at 302; *see, e.g., Harvey*, 194 Or

App at 104, 107-08 (where defendant consented to the search of his car—which smelled strongly of marijuana and was parked in the driveway of a house where drug paraphernalia had just been found—and where an officer stated that the drug paraphernalia had been found in defendant's presence just prior to the request for consent, a reasonable person would have understood that the search was for drugs; therefore, the scope of defendant's consent included "any compartment or containers in the car that might hold" drugs). Thus, we must determine the propriety of the search by evaluating whether the surrounding circumstances indicated to a reasonable person in defendant's position that Spencer-Wold was searching for something that would fit in the compact, *i.e.*, drugs, drug paraphernalia, or other contraband.

Here, the circumstances surrounding the encounter between defendant and Spencer-Wold do little to clarify Spencer-Wold's general request to search defendant's purse and defendant's response. Spencer-Wold made the request at a security checkpoint at the entrance of a court facility. Prior to the search request, Spencer-Wold had asked defendant to put her purse through an x-ray scanner twice. Additionally, the record shows that there were two signs at the entrance of the courthouse: one informing people that they were subject to search before entering the facility and another informing them that "firearms" and "dangerous weapons" were prohibited in the building. Finally, defendant was nearby when Spencer-Wold conducted the search and did not object when Spencer-Wold opened the makeup compact. Based on that record, we discern nothing that would have led a reasonable person to conclude that, when she asked to search defendant's purse, Spencer-Wold intended to search for drugs or drug paraphernalia that would fit inside of a small, closed container within defendant's purse.

First, the fact that the search occurred at a security checkpoint would not lead a reasonable person to infer that Spencer-Wold was looking for drugs or drug paraphernalia. Rather, a reasonable person would more likely have believed that Spencer-Wold requested consent to search for weapons to ensure the safety of the courthouse, not to search for drugs or drug paraphernalia for criminal law enforcement

purposes. *Cf. Blair*, 278 Or App at 519-20 (where officer indicated to defendant that he intended to help locate defendant's lost sweatshirt, that might have led a reasonable person to conclude that the officer requested to search defendant's backpack to find the sweatshirt, not to open closed containers inside in search of drugs); *Delong*, 275 Or App at 305 (search of a fanny pack was outside the scope of defendant's consent to search his car, in part, because, at the time defendant gave consent, "the deputy had focused solely on obtaining information from defendant to verify his identity, after stopping the car for a seatbelt violation" and had not given any indication that he was investigating a drug crime).

Second, the signs posted in the courthouse apparently provided no hint that searches performed upon entry to the courthouse might be for drugs or drug paraphernalia. Indeed, based on the sign announcing the prohibition of "firearms" and other "dangerous weapons," a reasonable person would more likely have inferred that those items were the target of the search, not drugs, drug paraphernalia, or any other contraband that might fit inside a makeup compact. Thus, the state has pointed to no contextual circumstances from which a typical, reasonable person could have inferred that Spencer-Wold asked to search defendant's purse for items that could be hidden in a closed container inside her purse.

The only circumstance at all helpful to the state is defendant's failure to revoke or limit her consent when Spencer-Wold pulled the makeup compact from her purse and opened it. Although not an independent basis to justify the search, *see Blair* 278 Or App at 521-22, a defendant's failure to withdraw or limit consent may shed light on the scope of the defendant's consent, particularly where the officer presents the defendant with a meaningful opportunity to object to the search of that container. *See Lamoreux*, 271 Or App at 763 n 1 (during a search of defendant's car for drugs, the officer held up defendant's backpack and asked if it belonged to defendant, and defendant said that it did); *Allen*, 112 Or App at 79 (during a search of defendant's car for drugs, weapons, or large sums of money, the officer asked defendant which of the suitcases in the trunk belonged to him, making it "apparent that [the officer] was going to open

the suitcase"). On the other hand, where the defendant is not in a position to observe the search of the closed container or does not have a "meaningful opportunity" to object before the officer opens it, the defendant's failure to object will not weigh in the state's favor. *See Jacobsen*, 142 Or App at 350 (failure to revoke consent irrelevant where defendant "was not in a position to observe [the officer] opening the bag and, therefore, did not have an opportunity to object to his doing so"); *Blair*, 278 Or App at 522 (explaining that we could not "conclude that defendant's failure to object indicated his consent" to the search of a closed container where "there was no indication that defendant knew that [the officer] was going to open the bag inside of his backpack or that defendant had a meaningful opportunity to prevent [the officer] from opening that bag").

Here, defendant was in a position to observe Spencer-Wold as she opened the compact. However, the record does not demonstrate that defendant knew that Spencer-Wold was going to open the makeup compact before she did so or had a "meaningful opportunity" to prevent Spencer-Wold from opening it once she had started. Unlike the officers in *Lamoreux* and *Allen*, Spencer-Wold did not ask defendant to verify that she owned the compact before opening it and thereby make it apparent that she was going to open it.

In sum, there was nothing in the exchange between Spencer-Wold and defendant or the circumstances surrounding their conversation that would have indicated to a typical, reasonable person in defendant's position that the scope of her consent to a search of her purse included small, closed containers, including the makeup compact, that were inside of the purse. Thus, the state failed to prove that the search of defendant's makeup compact was within the scope of her consent to the search of the purse. Accordingly, the search was unreasonable under Article I, section 9, and the trial court erred in denying defendant's motion to suppress the evidence found inside the makeup compact.

Reversed and remanded.